No. 14,440.

DISTRICT LANDOWNERS TRUST ET AL. *v.* COUNTY OF ADAMS ET AL.
(89 P. [2d] 251)

Decided March 27, 1939.

Mr. I. B. MELVILLE, Mr. MAX D. MELVILLE, Mr. CHARLES C. SACKMANN, for plaintiffs in error.

Mr. WILLIAM W. GAUNT, Messrs. PERSHING, NYE, BOS-WORTH & DICK, Mr. N. A. HUTCHINSON, Mr. LOUIS O. KELSO, Mr. HARRY BEHM, Mr. FRED N. HOLLAND, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

Plaintiffs in error, plaintiffs below, instituted this action to set aside a unitary or bulk sale of some two hundred tax sale certificates by the tax officials of Adams county—on alleged grounds of illegality, fraud, conspiracy and secrecy—to a predetermined purchaser at a flat percentage discount, and without regard to the actual value of the respective properties involved. Application was made for a temporary injunction restraining the sale, which, after an extended hearing, was granted. Subsequently, the court sustained a general demurrer to the amended complaint and dismissed the action.

The assignments of error are as follows: (a) "Chapters 24 [obviously 94] and 105, S. L. 1935, are void as contrary to public policy and welfare, and are void because in contravention of sections 21 and 24, article V, of the Constitution of Colorado. (b) Chapters 24 [94] and 105, S. L. 1935, were not intended to and do not authorize secret bulk sales of tax certificates to a predetermined purchaser and at a flat per centum discount, regardless of the respective values of the separate properties involved."

Since both acts are short and we have occasion herein to consider each in its entirety, we quote them in full:

Chapter 94. "An Act providing for the disposition of certificates of purchase by counties.

"Be It Enacted by the General Assembly of the State of Colorado:

"Section 1. Any county in this state having in its possession or under its control certificates of purchase resulting from the sale of land for the nonpayment of general taxes, may assign, sell or transfer such certificates in such manner, at such times, and on such terms as may be determined by resolution of the board of commissioners of such county, and thereafter such county shall execute and deliver such instruments as may be necessary fully to convey all of the right, title and interest of the county in or to such certificates.

"Section 2. Any county in this state having in its possession or under its control certificates of purchase resulting from the sale of land for the nonpayment of irrigation or drainage district taxes or assessments, may by agreement with the board of directors of the district involved, assign, sell or transfer such certificates as provided in section 1 of this act.

"Section 3. All assignments, sales or transfers of certificates of purchase by counties heretofore made are validated and confirmed.

"Section 4. All acts or parts of acts inconsistent herewith are hereby repealed.

"Section 5. In the opinion of the General Assembly an emergency exists; therefore, this act shall take effect and be in force from and after its passage.

"Section 6. The General Assembly hereby finds, determines and declares this act to be necessary for the immediate preservation of the public peace, health and safety."

"Approved February 16, 1935."

Chapter 105. "An Act providing for and validating the disposition of certificates of purchase by drainage or irrigation districts.

"Be It Enacted by the General Assembly of the State of Colorado:

"Section 1. Any irrigation or drainage district in this state having in its possession or under its control certificates of purchase resulting from the sale of land for the nonpayment of irrigation or drainage district taxes or assessments, may assign, sell or transfer such certificates in such manner, at such times, and on such terms as may be determined by resolution adopted by the board of directors of such district, and thereupon such district shall execute and deliver such instruments as may be necessary fully to convey all of its right, title and interest in or to such certificates.

"Section 2. Any irrigation or drainage district having in its possession or under its control certificates of purchase resulting from the sale of land for the nonpayment of general taxes, may by agreement with the board of county commissioners of the county in which the land is situated, assign, sell or transfer such certificates as provided in section 1 of this act.

"Section 3. All assignments, sales or transfers of certificates of purchase by irrigation or drainage districts heretofore made are validated and confirmed.

"Section 4. All acts and parts of acts in conflict herewith are hereby repealed.

"Section 5. In the opinion of the General Assembly an emergency exists; therefore, this act shall take effect and be in force from and after its passage.

"Section 6. The General Assembly hereby finds, determines and declares this act to be necessary for the immediate preservation of the public peace, health and safety.

"Approved February 16, 1935."

1. We are assuming that the situation which precipitated the instant litigation was caused by our pronouncement in the case of *Thompson v. Commissioners*, 91 Colo. 214, 14 P. (2d) 194. In that case, decided June 27, 1932, we said: "If they [the commissioners] were so obstructed

the remedy lies neither with them, nor with the courts, but with the legislature." While nothing is said in the opinion in the Thompson case concerning the question of public policy, we have on occasion taken judicial notice of the wide ramifications of the economic depression, one of which was the accumulation by the respective counties of a large number of tax certificates of purchase issued to them on tax sales with the result that the lands covered thereby were taken off the tax roll, with consequent loss of revenue and injury to the normal functions of government. We think it may not be doubted that the General Assembly had in mind a simplified procedure to be followed by county commissioners and directors of drainage and irrigation districts to the end that thousands of acres of land sold for taxes might again be placed on the tax roll, by passing a law making it less difficult for them to dispose of tax certificates.

■ No provision of our Constitutions, except the preambles, is called to our attention as having been violated, which concerns the power of the General Assembly to pass the acts here involved. We said in *Johnson v. McDonald,* 97 Colo. 324, 332, 49 P. (2d) 1017, quoting from *Commonwealth v. Reeder,* 171 Pa. 505, " 'Whatever the people have not, by their constitution, restrained themselves from doing, they, through their representatives in the legislature, may do. This latter body represents their will just as completely as a constitutional convention, in all matters left open by the written constitution.' " If the Constitution does not say, the opinion continues, " 'Thou shalt not,' and if we find no inhibition, then the statute is the law, simply because it is the will of the people and not because it is wise or unwise.' "

■ As to the preambles, they may not be invoked apart from specific provisions of the Constitutions to invalidate a statute. 11 Am. Jur. pp. 799-801.

■ 2. Do the acts in question violate section 21, article V of our state Constitution, which reads as follows? "No bill, except general appropriation bills, shall be

passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The argument of counsel for plaintiff on this point is, that because the title reveals only one subject, "While body contains three legislative subjects," that the acts must fail. What the three subjects are which counsel had in mind is obscure, but we assume them to be those italicized in the brief, namely, "in its possession or under its control," "such manner, at such times," "on such terms," and that these words applying exclusively to the county, "the like privilege of disposing of tax sale certificates is not given to a city, town, or city and county; and likewise a county treasurer is deprived of any authority in regard to such certificates," thus changing the duties of these officials without mentioning them. And it is urged that because chapter 105 mentions irrigation and drainage districts that "the same result ensues."

This and similar arguments, it appears to us, are without merit, as the plain, unambiguous language of the title in each case indicates. No cases are cited upon this point except, *In re Breene,* 14 Colo. 401, 24 Pac. 3, and the requirements there mentioned are fully satisfied by the titles of the acts here involved.

3. Nor do these acts violate the provisions of section 24 of article V, which reads as follows: "No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length."

We had occasion to consider this section in the recent case of *City and County of Denver v. People,* 103 Colo. 565, 88 P. (2d) 89, and in that opinion we re-state the now recognized law in Colorado covering this constitutional provision.

It is conceded by all parties concerned that the two acts here challenged do amend previous legislation by implication. Nothing is said in either concerning previous disposition of tax sale certificates of purchase by counties, irrigation, or drainage districts, but the offending elements of ambiguity, confusion and uncertainty are wholly lacking. On the contrary the acts themselves are commendable for brevity, certainty and choice of language; consequently, even if we should hold, which we do not, following *Denver v. People, supra,* in which 59 C. J. 871 is cited, that section 24 applies to laws amending previous ones by implication, we could, and would, hold these two acts valid as to the objection here urged, because they do not offend in the manner which we have held they must in order to violate said constitutional section.

Counsel's argument is further illustrated by logical deduction as follows: These two laws amend the revenue act and should bear some such title as ''An Act to Amend Section . . . of an Act Entitled 'An Act to Amend an Act to Amend an Act to Amend Section . . . of Chapter . . '35 C. S. A. Relating to Revenue,'' which had theretofore been the legislative practice. The General Assembly evidently concluded that this was an example of projecting a practice to a point where the benefit to certainty was worse than the evil sought to be avoided, and had become a reductio ad absurdum.

█ Coming now to the second assignment of error, that ''chapters 24 [94] and 105, S. L. 1935, were not intended to, and do not, authorize secret bulk sales of tax certificates to a predetermined purchaser and at a flat percentum discount, regardless of the respective values of the separate properties involved.'' We could dismiss this assignment by simply saying that it is predicated on a number of alleged facts which we must assume that the trial court found did not exist; but, because of the importance of the questions involved, we shall give some consideration to the merits of the objection, though

technically the court did not pass on the merits after issues joined in the main case. However, it did have the facts before it when it issued the temporary restraining order, and had them in mind when it dismissed the action.

Plaintiff in error District Landowners Trust was, and is, a Colorado corporation that had been interested in acquiring, holding and promoting real estate interests in Adams county. Much of its interest had been acquired in recent years by buying tax sale certificates and later procuring tax deeds to the properties covered by the certificates. The moving figure in all of the transactions was one Melville who was secretary-manager of the company. He had from time to time negotiated with the county officials for the purchase of tax sale certificates and represented several individual landowners in that behalf. It undoubtedly was his hope that under improved climatic and economic conditions, the trust eventually could pay up all the back taxes on the land in which it was interested and likewise persuade other landowners in the district to do the same. Melville had worked toward this end for several years but without substantial progress so far as Adams county was concerned. There were admittedly around 50,000 acres of land on which taxes had been delinquent for several years, some as far back as 1930.

In the spring of 1937, one Fulenwider, a Denver realtor, who for several years had been more or less interested in land immediately east of Denver, began making inquiries about the taxes relating to the same. He called on the county commissioners and talked with them, as well as to a number of landowners. Finally, late in the fall, he told the commissioners that he might be interested in the certificates held by the East Denver Irrigation District at ten cents on the dollar, and those held by Adams county at forty cents on the dollar. He was advised to take the matter up with Hill, the county attorney, which he did, for the purpose of having the county put a price

on the certificates, and making inquiry as to the legality of the transaction.

It appears that Melville was justified in the belief that if such sale was to be made that he would be given an opportunity to make the purchase for the trust, but on the other hand, the commissioners may well have been justified in the belief that because of Melville's failure, after several years, to effect the payment of any substantial amount of the taxes on the lands involved, he was in no position to handle it.

In any event, December 20, 1937, the board of directors of the defendant East Denver Municipal Irrigation District passed a resolution empowering the county commissioners to ''authorize and direct the county treasurer to offer for sale and sell, assign and transfer all of the county's right, title and interest in and to each and every certificate listed in exhibit A for such sums as said county commissioners may fix and determine for each of said certificates.'' Exhibit A is a list of about 250 individually described pieces of land, each set out in the following form:

| "Description of land | Cert. No | Year Sold | Adams Co. Interest | E.D.M.I. Dist. Int. | E.D.M.I. District |
|---|---|---|---|---|---|
| "W½ NE¼ 29-1-65 | 16622 | 1931 | 88.96 | 287.08 | 28.70" |

''W½ NE¼ 29-1-65 16622 1931 88.96 287.08 28.70'' The said resolution was filed with the county commissioners on the same date.

Also on the same date, at a meeting of the county commissioners, the following resolution was introduced by one of the commissioners:

''Resolution and Agreement of the
''Board of County Commissioners of
''Adams County, Colorado.

''Whereas, in this resolution and agreement the Board of County Commissioners of Adams County, State of Colorado, shall be referred to as the 'Board'; the East Denver Municipal Irrigation District shall be referred to as the 'District'; the County Treasurer of Adams

county, State of Colorado, as the 'County Treasurer'; and

"Whereas, a large number of certificates of purchase has been issued to the District or County as the result of sales of land located within said District and within Adams County, Colorado, for delinquent general taxes and irrigation district assessments for the years 1930, 1931, 1932, 1933 and 1934, which certificates are in the possession of said District; and

"Whereas, each of said certificates of purchase carries by endorsement all general taxes, as well as irrigation district assessments, assessed against the premises covered by said certificate subsequent to said sale and including taxes and assessments for the year 1936; and

"Whereas, so long as said certificates are owned and held by the said District and/or the County, it is impossible to enforce payment of accruing general taxes levied and assessed against such lands; and

"Whereas, the District proposes to offer for sale and sell its interest in certain of the certificates so held by it and has by proper resolution of its Board, a copy of which resolution is on file with the Clerk of this Board, proposed that this Board agree with the District to dispose of the County's interest in said certificates mentioned in said resolution, and being the same certificates as described in Exhibit A attached hereto and made a part hereof; and

"Whereas, it is provided by law that the District may by agreement with this Board sell, assign or transfer certificates of purchase in its possession resulting from the sale of lands within the District for nonpayment of general taxes; that the District may by agreement with this Board sell, assign or transfer certificates of purchase resulting from the sale of lands for the nonpayment of general taxes and irrigation district assessments; and that this Board may direct and order the sale of the county's interest in such certificates for such sums and on such terms as this Board may determine; and

156

"Whereas, in the opinion of this Board, it is to the best interests of the County of Adams that the said proposal be accepted and an effort be made to sell the said certificates, including both the interests of the District and the County therein, and place the lands covered thereby on the active tax rolls of the county;

"Now, therefore, be it resolved by the Board of County commissioners of Adams County, after full consideration of the premises:

"1. That it is for the best interests of the County of Adams that the certificates of purchase listed in Exhibit A, which is attached hereto and made a part of this resolution, be offered for sale and sold.

"2. That the amount set opposite each certificate listed in said Exhibit A is a fair and reasonable price for the interest of the County in such certificate.

"3. That the offer of the District as contained in its said resolution be, and the same hereby is accepted and agreed to.

"And Be It Further Resolved by the Board of County Commissioners of the County of Adams that the County Treasurer be, and he is hereby authorized, directed and empowered:

"1. To sell, assign and transfer all the right, title and interest of the County of Adams, State of Colorado, in and to each, any or all of said certificates of purchase listed in Exhibit A, attached hereto, to the first person offering to pay the amount fixed by this Board for the County's interest in said certificates; and also offering to pay the amount fixed by the District for its interest in said certificates.

"2. To execute and deliver such instruments, and to take such steps, and to do such things as may be necessary or desirable to transfer and convey all the right, title and interest of the County of Adams in and to any certificate or certificates so sold and to carry out the terms and provisions of this resolution.

"3. To make sales of any or all of the above de-

scribed certificates in accordance with the provisions hereof at any time within thirty (30) days from the date hereof.

. "Passed and Adopted at Brighton, Colorado, this ... day of December, A. D. 1937."

Exhibit A, to which reference is made in the resolution, is a list giving a description of the lands covered by the certificates of purchase with the amount of taxes thereon.

The resolution failed of adoption December 20th for want of a second to the motion, and so was tabled, but at a subsequent meeting, December 22nd, it was regularly adopted. It may be that at that time the commissioners knew that Fulenwider was to be the purchaser, but this is not disclosed by the record and the officials specifically deny it.

It is true that Melville did not know, and no attempt was made to notify him, as to the proceedings and actions of the commissioners in connection with the adoption of the above resolution; neither was there publication of any notice concerning the board's action in the matter. Melville may be justified in his contention that he was entitled to notice. The final result, however, was that the certificates listed in Exhibit A were sold to Fulenwider for about $30,000, on the basis of forty per cent to the county and ten per cent to the irrigation district.

There was much ill will and considerable friction manifested during the course of these proceedings, but the trial court concluded: "That the commissioners had sufficient facts that led them to do this, from a public-interest standpoint. There was enough evidence in the record to convince the court that their motives in this matter were entirely proper."

This conclusion removes the only basis on which this sale could be set aside, i. e., fraud or illegality. The immediate transaction may have been "secret" as to Melville, but the board was under no legal obligation to notify him, and in accordance with our conclusion that

the laws under which the sale was made, chapters 94 and 105, supra, are not vulnerable to any of the constitutional objections urged, the judgment dismissing the action is affirmed.

Mr. Justice Francis E. Bouck and Mr. Justice Bock not participating.

Mr. Justice Burke dissents.

Mr. Justice Burke dissenting.

The affirmance of this judgment depends entirely upon the validity of the statutes cited and these depend upon the compliance of their titles with the constitutional mandates. It seems indisputable to me that these titles do not "clearly," if at all, express the purpose of the acts. I therefore dissent.