No. 15,454.

WHITE CAP MINING COMPANY *v.* RESURRECTION MINING COMPANY ET AL.

(174 P. [2d] 727)

Decided November 18, 1946.

Messrs. Foard Brothers, for plaintiff in error.

Messrs. Pershing, Bosworth, Dick & Dawson, Mr. Winston S. Howard, Mr. Harold E. Popham, for defendants in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

The White Cap Mining Company began an action January 27, 1942, against the Resurrection Mining Company, W. G. McDonnell, Carl Youngstrom, Angelo Travison, Lawrence Lane, Jimmy Sullivan and Frank Kendrick, Jr., to recover possession of certain mining premises in Lake county, Colorado, together with $500.00 damages, and also sought to enjoin defendants from mining upon the premises. At the conclusion of a trial to the court without the intervention of a jury, judgment was entered in favor of defendants. To review this judgment plaintiff brings the cause here by writ of error.

We will refer to plaintiff in error, plaintiff below, as plaintiff or by name; defendants in error, defendants below, will be designated as Resurrection Company, and the individuals by name.

Plaintiff, in its complaint, alleged ownership of the mining premises and further that, in November, 1940, defendants, without plaintiff's knowledge or consent, took possession thereof, claiming title adversely to

plaintiff. It further alleged damages as a result of defendants' unlawful possession and, as set out in the abstract of record, prayed "judgment and decree of court, ejecting defendants from the premises and restoring plaintiff in the immediate possession thereof; that plaintiff recover judgment for the wrongful withholding of said premises in the sum of Five Hundred Dollars ($500.00), and that defendants and each of them be restrained from breaking down, mining or removing from said premises any ore or mineral-bearing rock or other material therefrom." Defendant Frank Kendrick, Jr. filed a disclaimer. The Resurrection Company, in the first defense in its answer, denied plaintiff's ownership; admitted its occupancy of the premises, and denied that plaintiff had any rights therein. It set up its ownership by virtue of certain tax deeds; alleged payment of all taxes and the making of improvements, and prosecuting mining operations in good faith on said premises, all of which added to the value of the property. In the second defense it affirmatively alleged that it was the owner, and entitled to the possession, of the mining premises. In the third defense in its answer it set up its title to the mining premises by virtue of certain tax deeds and alleged that it and its predecessors in interest had been in actual possession of the mining premises since December 7, 1937; and it relied upon the provisions of section 263, chapter 142, '35 C.S.A. Defendants, other than Resurrection Company and Frank Kendrick, Jr., filed answers containing substantially the same admissions, denials and defenses as those contained in the answer of the Resurrection Company.

Plaintiff filed a replication in which it generally attacked the validity of the tax deeds under which defendants claimed title, and it alleged a willingness to reimburse defendant Resurrection Company for all moneys necessary to effectuate a redemption from the sales for delinquent taxes.

At the trial it was stipulated that the plaintiff had

established title in and to the mining premises prior to the issuance of the tax deeds involved.

There are eleven specifications of points, but plaintiff, with commendable frankness, states that, "The issues involved to be determined by this Court are: 1. To determine the validity or invalidity of the tax deeds in question; 2. If the tax deeds are valid the issues are determined in favor of Defendants. If not, the question remains to be determined whether Defendants have established title by actual possession under the two-year statute of limitations. 3. If Defendants have not established title by the required possession under the statute, are Defendants entitled to reimbursement for improvements? It is conceded of course that Defendants are entitled to recover taxes and penalties as provided by statute. 4. Plaintiff is entitled to damages."

Plaintiff, being the owner of the mining premises involved, consisting of four mining claims or fractions thereof, i. e., The Ocean Wave; the White Cap; the Forfeit, and the Imes, failed to pay taxes thereon for the year 1931, and on December 14, 1932, each mining claim being of an assessed value of more than one hundred dollars, they were separately sold and separate certificates issued to Lake county, there being no other bidders for the mining premises, and the sale having taken place on the third and last day of the tax sale. June 15, 1936, the board of county commissioners, at a regular session, resolved, "That the County of Lake do, and does hereby assign, sell and transfer within 15 days from the date hereof Certificate of Purchase No. 24973, on Imes Survey 363 to John Harvey for $112.00; * * * and that the county treasurer be, and he is hereby authorized and empowered to execute and deliver on behalf of said county, such instruments as may be necessary fully to convey all the right, title and interest of the county in, for and to such certificate." Similar resolutions were adopted respecting the other three mining claims involved. June 30, 1936, the country treasurer, acting un-

der the resolution, assigned the four tax sale certificates to John Harvey, who retained the same without recordation in the office of the county clerk until he, three years from the expiration of the sale, requested the county treasurer to issue him a deed for the mining premises described in the certificates of purchase. The county treasurer caused two notices to be published including in each thereof two of the claims described in the four certificates of purchase, and thereafter, on the 7th day of December, 1937, executed one treasurer's deed in which was included two of the mining claims and another treasurer's deed in which was included the other two mining claims. No notice of the application for the treasurer's deed was served upon plaintiff because the record failed to disclose its address and such personal inquiry as was made failed to reveal it. January 7, 1938, John Harvey, the grantee in the two treasurer's deeds, conveyed the property therein described to the Yak Mining, Milling and Tunnel Company, the deed being recorded on July 13, 1938. Subsequently, and on May 7, 1941, the Yak Mining, Milling and Tunnel Company conveyed the property described in the John Harvey deeds to the Resurrection Mining Company, the deed being recorded on May 19, 1941. March 7, 1942, the county treasurer issued to John Harvey correction tax deeds. Thereafter, on March 9, 1942, John Harvey executed a quitclaim deed to the four mining claims to the Resurrection Company. The correction deeds from the county treasurer to John Harvey, dated March 7, 1942, were filed and recorded in the office of the county clerk and recorder of Lake county on November 14, 1942.

Plaintiff, as above noted, concedes that if the treasurer's deeds are valid, the judgment entered in favor of defendants is correct. It is its contention that the treasurer's deeds are invalid for the following reasons: (1) There was no assignment of any of the tax certificates entered on the clerk's records; (2) the notice of purchase and the application for deed were insufficient; (3)

the resolution of the board of county commissioners authorizing the assignment was in excess of the board's authority; (4) the original tax deeds were void; (5) the correction deeds inadmissible. We shall treat these objections to the validity of the treasurer's deeds and the title derived thereunder in this order.

█ 1. The assignment of the certificates of purchase to Harvey were not entered upon the record of sales in the office of the county clerk. It is plantiff's contention that until the assignments were so entered title in the plaintiffs did not vest in Harvey, and, consequently, title to the certificates of purchase not having vested in him, he had no right to demand or receive a tax deed to any of the mining claims. This contention is made under the provisions of section 245, chapter 142, '35 C.S.A.

The rights of the purchaser under a certificate of sale are not uniform in the different states. In some, his interest is held to be an estate subject to be defeated on redemption; in others, an inchoate title which would become complete upon expiration of the time for redemption where no redemption is made; in others his purchase gives a lien merely. 3 Cooley, Taxation (4th ed.), p. 2889.

Mr. Black, in his Law of Tax Titles (2d ed.), page 392, section 316, says: "The inceptive title acquired by the purchaser at a tax sale, before he receives his deed, is capable of conveyance or transmission to other parties. This could probably be done by quitclaim deed or other appropriate conveyance. * * * But the statutes commonly provide that this inchoate title may be transferred by the purchaser, to any person capable of holding it, by an assignment of his certificate of purchase. Whether this method of conveyance could be resorted to without the aid of statutory authority, may perhaps be regarded as open to some doubt, but the decisions seem to deny that it could."

Mr. Cooley, op. cit. page 2894, section 1456, makes the statement: "A certificate of purchase is assignable, by statute or otherwise, and the assignee becomes entitled to all the rights acquired by the purchase; * * *."

Our statute, section 245, chapter 142, '35 C.S.A., provides: "Such certificate of purchase shall be assignable by endorsement," following which it reads, "and an assignment thereof, when entered upon the record of sales in the office of the county clerk and treasurer, shall vest in the assignee or his legal representative all the right and title of the original purchaser." It will be noted that the first clause of the section is explicit, the certificate "shall be assignable by endorsement." Following this declaration there is no restrictive clause, condition or provision to qualify that explicit statement, but rather a coordinate clause which does not purport to limit or qualify the one preceding. As previously appears, this second clause provides that an assignment when entered upon the record of sales in the office of the county clerk and treasurer shall vest title in the assignee. Assuming that the office of county clerk and recorder was in the office, and the record of conveyances the record intended, the statute does not provide that title shall not vest until the certificate is so recorded. Such conclusion is only to be derived by negative implication. "An act which provides that all deeds shall be good and valid where witnessed by two or more persons and recorded will not by implication be construed as declaring that all deeds not so witnessed and recorded shall be void." 26 C.J.S., p. 313, §73.

Although section 20, chapter 40, C.S.A., provides that, "In order that all conveyances which are executed by an attorney in fact, may be seen to be executed with the assent of the grantor, the power of attorney * * * duly proved or acknowledged * * * shall be * * * recorded * * * ;" nevertheless we held in *Mulford v. Rowland,* 45 Colo. 172, 100 Pac. 603, that such recording was not essential to the validity or the proof of a power of at-

torney; that one which had been lost and not recorded could still be proven, by other evidence; and that title held thereunder was good. Concerning that statute we said in *Holladay v. Dailey,* 1 Colo. 460: "* * * and the statute which requires it [acknowledgment] being in the affirmative, and without any negative implication to exclude the common law, the conveyance will be valid, as between the parties thereto and those having notice thereof, even though not acknowledged at all." In *Downs v. Yonge,* 17 Ga. 295, the court considered a statute which provided: "That all deeds, by way of bargain and sale, executed under hand and seal, on a valuable consideration paid, in the presence of *two or more witnesses,* that are proved or acknowledged, and that are registered within twelve months from their date, shall be good and valid," and it held that the rules of construction forbade "that the common law, or a statute should be considered as repealed by a statute by implication, unless the implication is very strong," carrying in them unmistakably, the sense of negation. Accordingly, the court there concluded that a deed, though witnessed by but one person, was not a void deed.

Whatever conditions the statute imposes on assignments, the assignee of a certificate of purchase, who in good faith and for a valuable consideration purchases the interest of his assignor and receives from him the certificate bearing his endorsement, with the intent of transferring to the assignee the right and title represented thereby, would become the lawful holder of the certificate of sale. *Swan v. Whaley,* 75 Ia. 623, 35 N.W. 440. To hold otherwise would impair the obligation of a contract.

Section 247, chapter 142, '35 C.S.A., following the statutory provision as to assignment, and subsequently reenacted with broadened provision, provides that after expiration of the period of redemption, the treasurer shall make out a deed on demand and on presentation of the certificate of purchase by the purchaser or "law-

ful holder of the certificate." There is no requirement that the certificate must be recorded in order that the lawful holder shall be entitled to a deed. The same section further provides that where any certificate shall be lost (without distinction as to whether or not it may have been recorded in any office), the board of commissioners upon satisfactory proof of such loss may "cause a certificate of such proof and finding, properly attested by the county clerk under the seal of the county, to be delivered to such rightful claimant and a record thereof shall be duly made by the clerk in the recorded proceedings of such board * * *," and such properly authenticated order of the board of county commissioners may be presented to the treasurer in place of the original certificate where it has been lost or is wrongfully withheld from the "rightful owner." Again, there is no requirement that this in-lieu certificate be recorded in any record or in any office. It would be an unwarranted conclusion that the legislature intended to make the recording essential to the validity of the assignment, and yet require the treasurer to recognize its validity and issue a deed thereon reciting its due assignment, when the certificate on its face disclosed that it had not been recorded. It also would be singular that recording be made essential if the certificate was not lost but, if lost, no record be required of the in-lieu certificate issued in its place. Finally, in the subsequent section 258, of the same chapter, it is provided that the tax deed, which by section 247 is required to be issued to the "lawful holder of the certificate," "shall be prima facie evidence in all courts of this state in all controversies and suits in relation to the rights of the purchaser, his heirs and assigns * * * that the grantee named in the deed was the purchaser or the heir at law, or the assignee of such purchaser." Had it been intended that recording of the assignment of the tax sale certificate in the office of the county clerk was essential to its validity, the showing of such recorded assignment, which would necessarily

appear in the abstract of title, rather than the tax deed, would constitute prima facie showing that the grantee named was the assignee. For these reasons recording the assignment of a tax sale certificate is not a necessity prerequisite to the validity of the deed issued thereon. This conclusion is in line with the trend of modern legislation and judicial reasoning and decisions upon the subject.

In 1935 the legislature enacted chapter 94, Session Laws of Colorado, 1935, page 329, which appears as sections 249, 250 and 251, chapter 142, '35 C.S.A. Section 249 was amended by chapter 193, Session Laws of Colorado, 1941, page 650, but the amendment does not apply to the factual situation here. The title of the 1935 act is, "An Act Providing for the Disposition of Certificates of Purchase by Counties." Section 249 reads: "Any county in this State having in its possession or under its control certificates of purchase resulting from the sale of land for the non-payment of general taxes, *may assign, sell or transfer such certificates in such manner, at such times, and on such terms as may be determined by resolution of the board of commissioners of such county, and thereafter such county shall execute and deliver such instruments as may be necessary fully to convey all of the right, title and interest of the county in or to such certificates.*" (Italics ours) We have held this statute to be constitutional. *District Landowners Trust v. County of Adams,* 104 Colo. 146, 89 P. (2d) 251.

The 1935 act, supra, provided an exclusive and inclusive method by which counties might assign, sell and transfer all their right, title and interest in and to certificates of purchase held by them resulting from the sale of lands for the nonpayment of general taxes. It was not necessary, under the facts in this case, that the assignment of the certificates of purchase be entered upon the records of sale in the office of the county clerk in order to vest complete title thereto in the assignee. The board of county commissioners having fully com-

plied with the provisions of section 249, supra, complete title to the certificates of purchase became vested in Harvey.

■ The tax deed, upon which defendant relies, contains the usual recital of due assignment to the grantee therein named. By specific provision of the statute the deed is made prima facie evidence of the assignment in all courts and in all controversies and is sufficient basis of title to set in motion the statute of limitations here pleaded by defendant.

In *Chrisman v. Johnson*, 23 Colo. 264, 47 Pac. 296, the defendants relied upon a tax deed supported by a special five year statute of limitations. Here, defendants relied upon a tax deed supported by a special two year statute of limitations. In that case, as here, it was shown in evidence that there was no entry in the office of the county clerk of any assignment of the certificate of purchase, and that fact was urged by plaintiff as a defect making the tax deed void, and the case of *Territory v. Perea*, 6 N. M. 531, 30 Pac. 928, was called to the court's attention. The court, speaking through Chief Justice Hayt, noted among the defects urged to the tax proceedings: "assignment not of record," and held that all the objections urged must fail because no advantage had been taken of them before the running of the special statute of limitations.

Accordingly, we do not need to determine whether or not section 245 is applicable in the case of purchase and assignment by the county as here involved. If it is applicable, it avails plaintiff nothing.

■ The purpose of the provisions for recording the assignment of a certificate of purchase evidently was to protect the assignee, the treasurer and the county commissioners from subsequent claim by the assignor or other purported assignee of the certificate of sale for an in-lieu certificate in place of the original purportedly lost, and for deed under the provisions of section 247. Such is the purport of *Territory v. Perea, supra*.

■ As we construe sections 249, 250 and 251, chapter 142, '35 C.S.A., counties which have in their possession or under their control certificates of purchase may: (1) Sell them en masse; (2) select the purchaser; (3) not require the recordation of these assignments. Under the 1935 act, supra, the title to these certificates became absolute in Harvey upon the adoption of the resolution, the payment of the amount therein specified, and the assignment. Any other conclusion would make the plain language of this act meaningless.

■ 2. The record discloses that each of the mining claims was assessed at more than $100.00 and upon the assignee's request for a treasurer's deed, the provisions of section 255, chapter 142, '35 C.S.A., as amended by Session Laws, 1937, page 1053, became applicable. The "Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed," of which there were two, each contain two mining claims. As we understand plaintiff's contention, it is that the inclusion of the two claims in the one notice invalidates the treasurer's deed. The claims were separately assessed and separate certificates of purchase issued at the tax sale on December 14, 1932, and this fact could easily have been ascertained by plaintiff upon inquiry at the treasurer's office; nevertheless it is contended that the notices were misleading and prejudicial to the plaintiff because they clearly implied that no redemption could be made of either of the mining claims but that both or neither could be redeemed. How one might be thus mislead is not apparent. Conceding that the two mining claims could not, under section 255, have been included in one application, we find that in 1939 the general assembly enacted chapter 145 (S.L. '39, p. 487) wherein it was provided that any number of tracts of land not exceeding twenty-five, whether contiguous or noncontiguous, or whether claimed or owned under one or more titles of ownership, might be included in one notice of application for tax deed, and that such tracts or parcels

and the several sales thereof, not exceeding twenty-five in number, might also be included in a single request for a tax deed. This act also validated all requests for tax deeds and notices containing more than one certificate or tract.

The only service upon the record owner of notice of purchase and application for the issuance of a treasurer's deed was by publication, and this, it is contended, was insufficient to authorize the county treasurer to execute a valid deed to the property. The records in the office of the county treasurer fail to reveal any address of the plaintiff or any of its officers, and such inquiry as the treasurer made did not disclose it. There is evidence in the record that on the 5th day of March, 1934, plaintiff filed its annual report in the office of the secretary of state of Colorado in which the address of its officers is set forth and it is contended by plaintiff that had the treasurer complied with the provisions of section 255, supra, by making diligent search, the address of the officers could have been ascertained therefrom and notice, personally or by registered mail, served upon them. It also is contended by plaintiff that the Yak Mining, Milling and Tunnel Company had of record, a perpetual right of way across one of the claims and therefore had an interest and title of record; therefore, personal notice could and should have been served upon this company. Plaintiff attempted by documentary evidence to establish the perpetual right of way, but its offer so to do was denied and no objection or exception to that ruling appears in the record; consequently, we cannot consider the Yak Company had an interest or title of record, and, therefore, under the provisions of the statute, notice to it was not necessary.

To constitute diligent inquiry upon the part of the county treasurer, he was not obliged to go to the records in the office of the secretary of state to ascertain the address of plaintiff or its officers, and, so far as the

record discloses, this was the only source from which either address was obtainable.

Plaintiff contends that the notice was not published in a newspaper qualified to publish legal notices because the affidavit of publication does not clearly disclose that it was qualified under the provisions of our statute, section 2, chapter 130, '35 C.S.A., for the publication of legal notices. Plaintiff offered, and there was received in evidence, proof of publication of "Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed," wherein it was stated that there were three consecutive insertions and publications of the notice in the regular edition of a daily newspaper. The proof of publication contains this statement: "That such notice or advertisement was published in a newspaper duly qualified for that purpose within the meaning of an Act of the Legislature of the State of Colorado, Approved April 7th, 1921 (Session Laws of Colorado, of 1921, page 569), and amendments thereof." If it is plaintiff's contention that the proof of publication was defective or false in any respect, it was incumbent upon it to offer evidence in support thereof, and this it failed to do.

3. Plaintiff contends that the resolution of the county commissioners authorizing the assignment was in excess of the board's authority and consequently the act of the treasurer in assigning the certificates of purchase to John Harvey invalidates the treasurer's deed thereafter executed.

June 15, 1936, at a regular meeting of the board of county commissioners of Lake county, four resolutions were adopted, identical in form, the only difference therein being the name of the mining claim and the amount of taxes to be paid. The resolution for the Imes claim reads as follows:

"Leadville, Colorado, June 15, 36.
"Resolution.
"John Harvey.
"Resolved that the County of Lake do, and does here-

by assign, sell and transfer within 15 days from the date hereof Certificate of Purchase number 24973, on Imes Survey 363 to John Harvey for $112.00; including all prior and subsequent unpaid taxes now due, all of which shall be endorsed thereon and become a part thereof; and that the County Treasurer be, and he is hereby authorized and empowered to execute and deliver on behalf of said county, such instruments as may be necessary fully to convey all the right, title and interest of the county in, for and to such certificate.

"[Signed]   Adolph T. Schaefer, Chairman.
William G. Frank.
Charles E. Slavin.

Tax Committee."

Plaintiff contends that the resolution is void and that it conferred no authority to assign the certificates of purchase because in the resolution the board of county commissioners undertook to authorize the sale to an individual, rather than to the first person, offering to pay the amount fixed by the board. We take cognizance of our decisions rendered prior to the enactment of section 249, chapter 142, '35 C.S.A., holding that such a resolution was void and that an assignment made pursuant thereto would not afford a basis for a valid treasurer's deed, with the assignee named therein as grantee. Subsequent to the enactment of original section 249, supra, we announced our decision in *District Landowners Trust v. County of Adams,* 104 Colo. 146, 89 P. (2d) 251. In that case we had under consideration, among other things, section 249, supra, and we there held that said section amended previous legislation by implication. It is true that prior to the enactment of section 249, section 247, chapter 142, '35 C.S.A., limited the authority of the board of county commissioners in matters where, by resolution, it authorized the assignment of certificates for less than the face value thereof together with interest and penalties. It has been held that under section

247 the board of county commissioner's authority was limited to fixing the sum for which the assignment should be made. *Empire Ranch & Cattle Co. v. Neikirk,* 23 Colo. App. 392, 128 Pac. 468; *Radetsky v. Palmer, County Treasurer,* 70 Colo. 146, 199 Pac. 490; *Thompson v. Board of County Commissioners,* 91 Colo. 214, 14 P. (2d) 194.

Under the provisions of section 249, supra, the inclusion of the purchaser's name in a resolution such as concerns us here is not improper, and the assignment made pursuant thereto is valid except as limited by the provisions of chapter 193, Session Laws of Colorado, 1941.

■ 4. It is contended that the original treasurer's deeds are void because, it is said, "Nowhere in either of these tax deeds does it appear that any of the mining claims were separately struck off to the County, or that either or any of the mining claims were ever offered for sale at all; nor does it appear from either of these tax deeds that no person offered to pay the amount charged against either or any of the mining claims separately, nor that the treasurer became satisfied with [that] a sale of either of the mining claims could not be made, nor do the deeds show that one of the mining claims had not been redeemed before the deed was issued." We are at loss to understand the specific objections made to the treasurer's deeds, for a comparison of those in question with the statutory form set out in section 257, chapter 142, '35 C.S.A., shows that they are in substantial conformity with the statute and that there are no omissions or additions that materially affect them. It is settled law that when a treasurer's deed is in substantial conformity with the provisions of section 257, supra, it is prima facie evidence of those matters specifically enumerated in that section. The treasurer's deeds being in substantial conformity with the statute, it follows that the burden of nullifying them is on the party contending for their invalidity.

■ 5. Defendants, out of an abundance of precaution and with unnecessary meticulosity, had prepared and recorded two correction deeds executed by the county treasurer, dated March 7, 1942, which were recorded during the progress of the trial. We have recognized the propriety of a correction deed in situations where there was some mistake of the county treasurer which made a former deed irregular or defective. *Smith v. Griffin,* 14 Colo. 429, 23 Pac. 905; *Duggan v. McCullough,* 27 Colo. 43, 59 Pac. 743.

We have determined that the assignment of the tax certificates by the treasurer under the authority of the resolution of the board of county commissioners, dated June 15, 1936, vested in the assignee a complete title to the certificates, and the latter thereby acquired the right to have the legal title conveyed to him at the expiration of the time for redemption. There being no redemption it became the duty of the treasurer to convey the title to the assignee. Where the treasurer, by reason of any act or omission, fails to convey complete title after the period of redemption has expired, he has not discharged his full duty, and therefore has not exhausted his power to convey; such power remains with him until he actually does convey. Here, the preliminary steps requisite to the issuance of the treasurer's deed were, as we have determined, taken in accordance with the provisions of the statute. At the expiration of the period of redemption the assignee of the certificates of purchase had the right to be clothed with the legal title to the property. If a correction deed was necessary, the treasurer should have issued it. Upon his refusal to do so, an action in mandamus would lie. *Duggan v. McCullough, supra;* 3 Devlin on Deeds (2d ed.) §1414.

■ So far as we are able to discern, the only incorrect statement in the two original deeds was a recital that the action of the board of county commissioners of Lake county was entered of record on the 21st day of June, 1937, whereas in fact it was entered on the 15th

day of June, 1936. We consider this a clerical error occurring in the preparation of the deed, and its correction by the execution of proper deeds, while probably unnecessary, did not prejudice plaintiff, and, consequently, it has no ground for complaint. The correction deeds were admissible in evidence. *Smith v. Griffin, supra.*

We have disposed of all of plaintiff's objections relative to the validity of the treasurer's deeds and find them to be groundless. Plaintiff has conceded, and with this concession we agree, that if the treasurer's deeds are valid, judgment must be entered in favor of defendants.

Defendants take the position that the treasurer's deeds are valid and that they and their predecessors in interest have been in possession of the mining premises for more than two years prior to the commencement of this action on January 27, 1942. Without entering into a lengthy discussion as to what amounts to possession, the records clearly disclose that defendants and their predecessors in interest were in actual possession, under valid treasurer's tax deeds, for more than the two years prior to the commencement of this action, and, consequently, under the provisions of section 263, chapter 142, '35 C.S.A., plaintiff is in no position to maintain this action.

The record discloses no prejudicial error, and, accordingly, the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.