**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL D. DOLAN,

      Plaintiff/Counterclaim-
      Defendant/Appellant,

  v.

JOHN W. MADISON; J.C.
BENNETT; JAMES C. BLANNING,
JR.; ASPEN-WESTERN
CORPORATION, a Colorado
corporation, and any and all unknown
persons who claim any interest in the
subject matter of this action,

      Defendants/Crossclaim-
      Defendants,

and

UNITED STATES OF AMERICA,

      Defendant/Crossclaim-Plaintiff/
      Counterclaim-Plaintiff/
      Appellee,

and

SECRETARY OF AGRICULTURE;
UNITED STATES FOREST
SERVICE,

      Defendants-Appellees.

No. 04-1328
(D.C. No. 00-MW-2375-(OES))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiff and counterclaim defendant, Michael D. Dolan, appeals from an order of a United States Magistrate Judge[1] granting summary judgment in favor of defendants the United States of America, the Secretary of Agriculture, and the United States Forest Service (United States) on his claims for record title and adverse possession, and in favor of the United States on its counterclaim for record title to real property. We affirm.

## Background

The property at issue in this case is an approximate eight-acre patented mining claim known as the Franklin Lode Mining Claim (Franklin). It is located in the White River National Forest, about ten miles east of Woody Creek, in Pitkin County, Colorado.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] The parties consented to the exercise of jurisdiction by a magistrate judge.

The undisputed, material facts concerning the Franklin began more than one hundred years ago with a location certificate recorded in 1889, and the issuance of a patent to John W. Madison in 1896. In 1908, Mr. Madison conveyed a one-third interest in the Franklin to J.C. Bennett (Bennett), and retained a two-thirds interest.[2]

Mr. Madison paid property taxes on his two-thirds interest through 1918, but in 1919, his interest was struck off to Pitkin County because he failed to pay the taxes. In 1920, a Lena Guile Exc. paid the taxes due for 1919, and continued to pay the taxes each year thereafter through 1940. A John B.C. Guile[3] paid the taxes for 1940-41, and thereafter, Lena Guile resumed payments through 1948. In 1950 however, the two-thirds interest in the Franklin was placed on the delinquent tax list, and a tax sale for the two-thirds interest commenced on December 11, 1950. Because there were no bidders, it was struck off to the County through a treasurer's certificate of purchase.

---

[2]     When Bennett failed to pay the property taxes, his one-third interest was offered for sale in 1908 by the Pitkin County Treasurer. However, because there were no bidders, the interest was struck off to Pitkin County via a treasurer's certificate of purchase, and was later conveyed to the County in 1954 pursuant to a treasurer's deed. Plaintiff admitted that his claim is based solely on the two-thirds interest in the Franklin that was retained by Mr. Madison. Thus, he has no claim to the one-third interest conveyed to Bennett.

[3]     The John B.C. Guile who paid the taxes in 1940-41 is the deceased great uncle of the John B.C. Guile who executed the bargain and sale deeds to plaintiff in 2000, discussed *supra*.

In August 1954, the Pitkin County Treasurer issued a Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed for the two-thirds interest in the Franklin, copies of which were sent by registered mail to Lena Guile and Mr. Madison.[4] The notice informed them that unless they redeemed the property, it would be conveyed to Pitkin County on October 18, 1954. When there was no response, a treasurer's deed issued to the Pitkin County Board of County Commissioners, and was recorded on October 20, 1954.[5]

In May 1994, Congress enacted the Exchange Act, Public Law No. 103-255, 108 Stat. 684 (1994), pursuant to which Pitkin County agreed to exchange certain lands, including the Franklin, for a 230-acre parcel owned by the United States. As part of the exchange, the County conveyed the Franklin to the United States by a quit claim deed, which was recorded August 17, 1994. The Franklin then became part of the White River National Forest.

In or about 2000, plaintiff apparently decided to try to obtain title to the two-thirds interest in the Franklin. To that end, he located Lena Guile's great nephew, John B.C. Guile. Mr. Guile admitted that he knew nothing about the Franklin or Mr. Madison, and that he did not believe that either he or his father,

---

[4] Mr. Madison's notice was returned as unclaimed.

[5] Pitkin County continued to own the two-thirds interest in the Franklin until 1994 when it was conveyed to the United States. From 1954 through 1994, no property taxes were assessed because county-owned property is tax exempt. Colo. Rev. Stat. § 39-3-105.

Clifford J. Guile, had any ownership interest in the Franklin. Nonetheless, on November 13, 2000, in exchange for $100 and money for postage and gas, Mr. Guile gave plaintiff two bargain and sale deeds from himself and his father that purported to convey a two-thirds interest in the Franklin and four other mining claims to plaintiff. These "wild deeds"[6] were recorded on November 27, 2000, and three days later, plaintiff filed his quiet title suit against the United States.

In October 2002, the Pitkin County Treasurer issued a corrected treasurer's deed for the one-third interest in the Franklin previously owned by Bennett. The correction deed explained why the tax sale was untimely. In January 2003, the County executed another quit claim deed to the United States for Bennett's one-third interest in the Franklin.

## Standard of Review

The Quiet Title Act permits lawsuits against the federal government "to adjudicate a disputed title to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a). Although the parties' respective claims arise under a federal statute, questions involving real property rights are determined by state law unless federal law requires a different result. *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378-81 (1977); *United*

---

[6] A "wild deed" is defined as "[a] recorded deed that is not in the chain of title . . . ." *Black's Law Dictionary* 446 (8th ed. 2004).

*States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1389 n. 4 (10th Cir. 1980).

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1175. When applying Colorado law, the district court should ascertain and apply the state law to reach the result the Colorado Supreme Court would reach if faced with the same question. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). We also review the district court's application of state law de novo. *Id.*

Record Title

Under Colorado law, "a plaintiff in a quiet title action . . . bears the burden of establishing title in the property superior to that of the defendant . . . [and] the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in [the] defendant[]." *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986) (internal quotation omitted).

Plaintiff's theory is that the 1954 treasurer's deed issued to Pitkin County is void because the 1918 tax sale of Bennett's one-third interest was untimely. Assuming for argument that the conveyance of the one-third interest is void

because the tax sale was untimely, those arguments belong to Bennett, who never raised them. "[A]ny complaint of failure of [procedural deficiencies in the tax sale relating] to [Bennett] is not properly raised by [plaintiff] who derives from [John B.C. Guile and Clifford J. Guile] whatever interest he contends for here." *Knoch v. County of Mesa*, 411 P.2d 1, 3 (Colo. 1966).

Similarly, as to the two-thirds interest described in the 1954 treasurer's deed, plaintiff lacks standing to challenge any deficiencies because neither he nor his predecessors in interest (John B.C. Guile and Clifford J. Guile) had any interest in the Franklin in 1954 when the treasurer's deed was issued to Pitkin County. *See Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1314 (Colo. App. 1998) (holding that a party lacks standing to challenge the validity of a deed issued by a county treasurer in the absence of actual injury to a legally protected interest).

For the first time on appeal, plaintiff argues that there was an additional defect in the 1954 treasurer's deed, and seeks to supplement the record on appeal with his interrogatory answers. He alleges that the two-thirds interest had an assessed value of more than $100 in 1954, and the Pitkin County Treasurer failed to comply with publication requirements concerning such interests. We reject this new argument for several reasons.

As discussed previously, plaintiff lacks standing to challenge the validity of the 1954 treasurer's deed because neither he nor his predecessors in interest

owned any interest in the Franklin at the time of the sale. Next, although plaintiff's interrogatory answers stated his belief that the two-thirds interest was assessed at more than $100, these answers were never presented to the district court as part of his response to the United States' motion for summary judgment, nor did he advance this argument below. As a general rule, we do not consider factual or legal arguments on appeal that were not raised in the district court, and there is no reason to depart from that rule in this case. *Monreal v. Potter*, 367 F.3d 1224, 1231 (10th Cir. 2004); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir.1992). Last, and perhaps more to the point, the affidavit of Pitkin County's Chief Treasurer submitted by the United States in support of its motion for summary judgment stated: "According to the records, the 2/3rds interest in the Franklin was assessed at $50.00 in 1950." Aplt. App. Vol. III at 278. Plaintiff never contradicted this evidence.

Finally, plaintiff argues that the correction deed is void because Pitkin County had no authority to request the deed. We agree with the district court's conclusion that this argument lacks merit under Colorado law. Under nearly identical factual circumstances, the Colorado Supreme Court held that where a treasurer's deed contains a defect, the treasurer has not discharged his duty to convey and is not only authorized, but required to issue a correction deed. *White Cap Mining Co. v. Resurrection Mining Co.*, 174 P.2d 727, 735 (Colo. 1946).

Here, the undisputed material facts established that the United States, which can trace its chain of title back to the 1889 location certificate, has superior record title to the Franklin over plaintiff, whose chain of title began in 2000 with the recording of the "wild deeds."

Adverse Possession

Although the Quiet Title Act permits lawsuits against the federal government to adjudicate disputed title to real property in which the United States claims an interest, it contains the prohibition that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession." 28 U.S.C. § 2409a(n). Plaintiff asserts that the prohibition does not apply if he or his predecessors in interest acquired title to the Franklin by adverse possession *before* the United States first claimed an interest[7] in the property on August 17, 1994. The district court disagreed, and held that the clear and unambiguous language of the statute barred any claims for adverse possession, regardless of when the claim may have accrued.

Assuming for argument that a plaintiff may base a quite title claim on a claim of adverse possession that has ripened into title prior to the United States

---

[7]     Plaintiff argues alternatively that the prohibition does not apply until the United States obtains good title to the property. This is contrary to our prior cases interpreting the Quiet Title Act and the requirement that the United States need only claim an interest in the property to trigger the Act's limitation provision. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Stubbs v. United States*, 620 F.2d 775, 781 (10th Cir. 1980).

claiming an interest in the property, there are no facts to support such a claim in this case. Colo. Rev. Stat. § 38-41-101(1) provides for adverse possession where a plaintiff and/or his predecessors in interest have been in possession of property for more than eighteen years. The possession must be: (1) actual; (2) adverse; (3) hostile; (4) under claim of right; (5) exclusive; and (6) uninterrupted. *See generally, Salazar v. Terry*, 911 P.2d 1086, 1089, n. 4 (Colo. 1996). There is no such evidence here, and indeed, plaintiff points to nothing in the record to establish such a claim. Similarly, although Colo. Rev. Stat. §§ 38-41-108 and 38-41-109 recognize claims of adverse possession based, among other things, on the payment of property taxes for seven successive years, again there is no such evidence.

Admittedly, the district court did not reach these conclusions in its decision because it found that plaintiff's adverse possession claims were barred. Nonetheless, we may "affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quotation marks and citation omitted).

## Conclusion

Based on the foregoing undisputed, material facts, the district court correctly found that the United States was entitled to summary judgment on

plaintiff's claims for record title and adverse possession. The court also correctly

entered summary judgment in favor of the United States on its counterclaim for

record title to the Franklin. The judgment of the district court is AFFIRMED.

Plaintiff's motion to supplement the record on appeal is DENIED.


Entered for the Court


Wade Brorby
Circuit Judge