2015 COA 164

**Barbara G. OWENS and G. Charles Gadbois, Plaintiffs–Appellees,**

v.

**Edward H. TERGESON, as Trustee of the Harold Furrow Family Trust and as Personal Representative of the Estate of Esther A. Furrow; AED Group, LLC; and Pegasus Minerals, LLC, Defendants–Appellants.**

**Court of Appeals No. 14CA2146**

Colorado Court of Appeals, Div. II.

Announced November 5, 2015

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2015.

Weld County District Court No. 14CV30160, Honorable Julie C. Hoskins, Judge.

Poulson, Odell & Peterson, LLC, Scott M. Campbell, Aaron G. Norris, Denver, Colorado, for Plaintiffs–Appellees.

Otis, Bedingfield & Peters, LLC, Jennifer Lynn Peters, Christian J. Schulte, Greeley, Colorado, for Defendants–Appellants.

Opinion by JUDGE DAILEY

¶ 1 In this dispute over mineral rights, defendants Edward H. Tergeson, as trustee of the Harold Furrow Family Trust and as personal representative of the Estate of Esther A. Furrow; AED Group, LLC; and Pegasus Minerals, LLC (collectively, the Furrow Defendants), appeal the district court's order denying their motion for summary judgment and granting summary judgment in favor of Plaintiffs, Barbara G. Owens and G. Charles Gadbois. We affirm.

### I. Background

¶ 2 Plaintiffs and the Furrow Defendants both assert that they are the rightful owners of certain mineral interests located in four adjacent tracts of land (Tracts A–D) in Weld County.

¶ 3 The parties' conflicting claims revolve, in the first instance, around an interpretation of two warranty deeds dated November 25, 1950 (1950 Deeds). One conveyed Tract A; the other conveyed Tracts B–D. The parties disagree whether the language in the 1950 Deeds reserved all oil, gas, and other mineral interests in the land to the original grantors or fully conveyed those interests to the deeds' grantees. Plaintiffs argue that, as successors-in-interest to the deeds' grantors, they are the rightful owners of the mineral rights reserved in the deeds. The Furrow Defendants, as successors-in-interest to the grantees on the deed, argue that, inasmuch as no such reservation of rights occurred, they own the rights.

¶ 4 In addition, the Furrow Defendants argue that, by way of a 1973 quiet title action (1973 Action) and a subsequent conveyance, they became the rightful owners of at least some of the disputed mineral rights. Plain-

tiffs, however, argue that the 1973 Action was void because they were not named as parties in the action and their predecessors-in-interest were not properly served in the case.

¶ 5 In the district court, the parties presented their arguments in cross-motions for summary judgment. The district court ruled in favor of Plaintiffs, concluding,

- as a matter of law, that, *in the 1950 Deeds*, the grantors, Plaintiffs' predecessors-in-interest, validly reserved their interest in the mineral rights in Tracts A–D; and
- *the judgment in the 1973 Action* affected only Tract A but was void because of invalid service of process on Plaintiffs' predecessors-in-interest.

¶ 6 Consequently, the district court granted Plaintiffs' motion for summary judgment while denying the Furrow Defendants' cross-motion for summary judgment.

## II. Analysis

¶ 7 The Furrow Defendants contend that they, rather than Plaintiffs, should have been granted summary judgment with respect to the 1950 Deeds and the effect of the 1973 Action. Alternatively, they contend that, at the very least, disputed issues of fact existed with respect to those issues, precluding summary judgment in Plaintiffs' favor. We are not persuaded.

¶ 8 Initially, we note that, while the denial of summary judgment is usually not appealable, *Moss v. Members of Colo. Wildlife Comm'n*, 250 P.3d 739, 742 (Colo.App. 2010), it is appealable when, as here, it effectively puts an end to the litigation, as when cross-motions result in entry of judgment for one party and a denial for the other, *Glennon Heights, Inc. v. Cent. Bank & Tr.*, 658 P.2d 872, 875 (Colo.1983); *Mahaney v. City of Englewood*, 226 P.3d 1214, 1217 (Colo.App. 2009).

¶ 9 Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Geiger v. Am.*

*Standard Ins. Co.*, 192 P.3d 480, 482 (Colo. App.2008). We review a grant or denial of summary judgment de novo. *Id.*

¶ 10 With these principles in mind, we address the issues raised by the Furrow Defendants on appeal.

### A. Interpretation of 1950 Deeds

#### 1. Facts

¶ 11 Plaintiffs' predecessors-in-interest on the deed conveying Tract A were Frankie Alice Gadbois and G.C. Gadbois (the Gadbois); Plaintiffs' predecessors-in-interest on the deed conveying Tracts B–D were Frankie Alice Gadbois and William Van Pelt.[1]

¶ 12 The grantee on both 1950 Deeds (and, thus, a predecessor-in-interest to the Furrow Defendants) was Hubert A. Brown.

¶ 13 The deed conveying Tract A contains the following granting language:

WITNESSETH, That the said parties of the first part, for and in consideration of the sum of DOLLARS ($10) and other good and valuable considerations, [to] the said parties of the first part in hand paid by the said party of the second part, the receipt wherof is hereby confessed and acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell, convey and confirm, unto the said party of the second part, his heirs and assigns forever, all the following described lots or parcels of land, situate, lying and being in the County of Weld and State of Colorado, to-wit:

[Tract A]

TOGETHER with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances.

---

1. Plaintiffs obtained their interests in Tract A by inheritance from the Gadbois and, in Tracts B–D, by a 1961 conveyance from the Gadbois, Van Pelt, and his wife.

Immediately after this granting clause appears a habendum clause, which states:

TO HAVE AND TO HOLD the said premises above bargained and described, with the appurtenances, unto the said party of the second part, his heirs and assigns forever. And the said parties of the first part, for themselves their heirs, executors, and administrators, do covenant, grant, bargain, and agree to and with the said party of the second part, his heirs and assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefensible estate of inheritance, in law, in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and encumbrances of whatever kind or nature soever. *except reserving all oil, gas and other minerals and the right to use so much of the surface as is necessary to develop, produce and care for the same; also 1950 taxes;* and the above bargained premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns against all and every person or persons lawfully claiming or to claim the whole or any part thereof, the said parties of the first part shall and will WARRANT AND FOREVER DEFEND.

(Enlarged font in original.) (Emphasis added.)

¶ 14 The deed conveying Tracts B–D contains virtually identical language to that of the deed conveying Tract A, the only exception being a variation of the reservation contained in the habendum clause:

*Except reserving all oil, gas and other mineral and the right to use so much of the surface as is necessary to develop, produce and care for the same; Also except a 1/128th royalty interest to second party; also 1950 Taxes....*

(Enlarged font in original.) (Emphasis added.)

### 2. Analysis

¶ 15 Deeds are usually construed in accordance with the general rules of construction of written instruments. *Terry v. Salazar*, 892 P.2d 391, 393 (Colo.App.1994), *aff'd*, 911 P.2d 1086 (Colo.1996). In accordance with those rules, where a deed is unambiguous, its terms must be enforced as written. *See City of Aurora v. N. Colo. Water Conservancy Dist.*, 236 P.3d 1222, 1226 (Colo.2010) (considering a contract). If, however, an ambiguity exists in an instrument's reservation of oil and gas rights, the construction must favor the grantee. *See Clevenger v. Cont'l Oil Co.*, 149 Colo. 417, 421, 369 P.2d 550, 552 (1962); *Keith v. Kinney*, 140 P.3d 141, 146 (Colo.App.2005).

¶ 16 "[T]he fact that the parties have different opinions about the *interpretation* of the deed does not of itself create an ambiguity." *Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 22 (Colo.App.1990) (emphasis added). "In ascertaining whether certain provisions of an instrument are ambiguous, we must examine the instrument's language and construe it in harmony with the plain and generally accepted meaning of the words employed. Terms are ambiguous when they are susceptible of more than one reasonable interpretation." *Allen v. Reed*, 155 P.3d 443, 445 (Colo.App.2006).

¶ 17 The interpretation of a deed and the determination of whether it is ambiguous are questions of law subject to de novo review by this court. *See Littlehorn v. Stratford*, 653 P.2d 1139, 1144 n. 6 (Colo.1982); *Terry*, 892 P.2d at 393.

¶ 18 The Furrow Defendants assert that, where the provisions of a "granting clause" and those of "a warranty (or habendum) clause" conflict, the provisions of the granting clause (here, reserving no mineral interests) must prevail. That indeed was the common law view endorsed by the supreme court in *Million v. Botefur*, 90 Colo. 343, 345, 9 P.2d 284, 284 (1932). *See, e.g., CNX Gas Co. v. Rasnake*, 287 Va. 163, 752 S.E.2d 865, 867–68 (2014) (discussing the common law rule). However, in *Mitchell v. Espinosa*, 125 Colo. 267, 243 P.2d 412 (1952), the supreme court rejected that rule in favor of the more

modern view that the overall intent from the deed considered as a whole should control. *See id.* at 274, 243 P.2d at 415.[2]

¶ 19 This evolution in the law has occurred in other jurisdictions as well. *See, e.g., In re Fleck's Estate,* 261 Iowa 434, 154 N.W.2d 865, 868 (1967) ("The modern rule, and the one we have adopted, is to construe the whole instrument without reference to the formal divisions in order to effectuate, if possible, the grantor's intent.") (citations omitted); *State v. Hess,* 684 N.W.2d 414, 423 (Minn.2004) (A court must "read the granting and habendum clauses together 'in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where it was manifestly intended that it should do so.'") (quoting *Youngers v. Schafer,* 196 Minn. 147, 264 N.W. 794, 798 (1936)); *Riverton Country Club v. Thomas,* 141 N.J. Eq. 435, 58 A.2d 89, 96 (N.J. Ch.1948) (stating that the complainant's contention that a deed's granting clause will prevail if it is contrary to the habendum was a statement of "an ancient legal rule," but that "the modern concept" was that "the intent of the parties, expressed in the deed as a whole, must, if legal, govern"), *aff'd,* 1 N.J. 508, 64 A.2d 347 (1948); *Sharpe v. Smith,* 68 N.M. 253, 360 P.2d 917, 918 (1961) ("[T]he rule giving decisive weight to the granting clause as against the habendum where there is an irreconcilable conflict as to the estate granted was set forth [in previous cases], but [is] to be applied merely as a rule of construction *subordinate to the purpose of ascertaining the real intention of the parties.*" (emphasis added)); *Lockett v. Thomas,* 179 Tenn. 240, 165 S.W.2d 375, 376 (1942) (noting that "[t]he technical rules of the common law as to the division of deeds into formal parts have long since been disregarded in this state, and the rule is that all parts of the deed shall be examined together for the purpose of ascertaining the intention"); *Kennedy v. Rutter,* 110 Vt. 332, 6 A.2d 17, 20 (1939) ("Our master rule of con-

struction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangements." (quoting *Vermont Kaolin Corp. v. Lyons,* 101 Vt. 367, 143 A. 639, 642 (1928))).

¶ 20 According to one commentator,

[t]he later cases justify the general observation that in most jurisdictions a clear and special designation of the particular estate conveyed, whether contained in the granting or in the habendum clause, will prevail over conflicting but merely general or formal language of the opposing clause. There are many applications of this principle; it is most significantly illustrated by the cases of deeds prepared on printed forms in such manner that the formal expressions of the forms conflict with words specially inserted to indicate the real intent.

W.W. Allen, Annotation, *Conflict Between Granting and Habendum Clauses as to Estate Conveyed,* 58 A.L.R.2d 1374, § 2 (1958) (footnote omitted).

¶ 21 This is, indeed, the situation that we have in the present case—and which, as the district court found, is controlled by the supreme court's decision in *Mitchell.* In *Mitchell,* the supreme court held that a reservation of mineral interests referenced only in a deed's habendum clause was effective despite the absence of a similar restriction in the deed's granting clause. 125 Colo. at 274, 243 P.2d at 415. The habendum clause, acknowledged by the court as "the space provided for mention of any exceptions, limitations, or liens upon the title otherwise conveyed," contained the statement "except one half of oil right reserved by [grantor]." *Id.* at 269, 243 P.2d at 413. The court found that "[c]onsidering the deed in the case at bar as a whole, it is clear that the parties intended that one-half of the oil rights in the

2. *Accord Corlett v. Cox,* 138 Colo. 325, 331, 333 P.2d 619, 622 (1958) (Courts must ascertain the parties' intentions "from [the deed's] language, not as it is presented in particular sentences or paragraphs, but according to its effect when viewed as an entirety."); *Percifield v. Rosa,* 122 Colo. 167, 177, 220 P.2d 546, 551 (1950) ("Har-

monization of all its provisions is the real object ... with all language therein given force and effect if it can be done consistently, and when it can be done it should be construed as to give it effect rather than ineffectuality, and this applies equally to all the provisions of the deed.").

land was reserved to the grantor." *Id.* at 274, 243 P.2d at 415.

¶ 22 The circumstances in the present case closely parallel those in *Mitchell.* Like the deed in *Mitchell,* the 1950 Deeds both contain a reservation of mineral interests referenced only in the habendum clause. *Id.* at 269, 243 P.2d at 413. Each deed also appears to be a printed form of warranty deed with the reservation language added, as was the case in *Mitchell.* *See id.* As in *Mitchell,* considering the deed as a whole, the parties clearly intended that the mineral rights in the land be reserved to the grantors. *Id.* at 274, 243 P.2d at 415; *see also Gibson v. Pickett,* 256 Ark. 1035, 512 S.W.2d 532, 537–38 (1974) (giving effect to a mineral reservation within a deed's habendum clause even though the deed failed to mention the reservation in its granting clause); *Jones v. Am. Ass'n,* 120 Ky. 413, 86 S.W. 1111, 1112 (1905) ("[R]eservations or exceptions are enforced, although contained in the habendum clause of the deed, as fully as if set out in the granting clause, when on the whole instrument the intention of the parties is sufficiently expressed to be enforced."); *Price v. Johnson,* 78 N.M. 123, 428 P.2d 978, 980–81 (1967) (recognizing that "where a deed is susceptible to alternative construction, the construction most favorable to the grantee will be adopted," but still finding that in light of "the modern rule" the reservation in the habendum at issue was not void for repugnancy).

¶ 23 Based on *Mitchell* and other authorities cited above, we, like the district court, determine that the 1950 Deeds unambiguously reserved to the Plaintiffs' predecessors-in-interests the mineral rights in Tracts A–D in the land later conveyed to the Furrow Defendants' predecessor-in-interest, Hubert A. Brown.

¶ 24 In so concluding, we necessarily reject the Furrow Defendants' reliance on the distinction between a "granting clause" and a "warranty clause" made in *O'Brien v. Village Land Co.,* 794 P.2d 246, 251 (Colo.1990). In *O'Brien,* the supreme court noted that

> [t]he purpose of a granting clause is to define and designate the estate conveyed[,] [while a] covenant of general warranty, on

the other hand, is a guarantee that the grantor is vested of an estate in fee simple with full power to convey, that the property is free of all encumbrances except as listed in the deed, and that the grantor will guarantee title and peaceful possession and will defend the grantee's title to the property.

*Id.* at 251 (citation omitted). Thus, the court said, "[e]xceptions inserted into a covenant of warranty are intended only to protect the grantor on the warranty and are not intended as a limitation on the nature of the interest conveyed by the granting clause." *Id.*

¶ 25 The Furrow Defendants' reliance on *O'Brien* is misplaced because the habendum clause with which they take issue here is not a warranty clause.

¶ 26 A "warranty clause" is a "contractual clause containing a warranty" whereby "the lessor guarantees that title is without defect and agrees to defend it." Black's Law Dictionary 1823 (10th ed. 2014). A "habendum clause," on the other hand, is the part of an instrument that "defines the extent of the interest being granted and any conditions affecting the grant" and is typically introduced with the phrase "*to have and to hold.*" *Id.* at 825. Although it is true that "it is the granting clause, not the warranty clause in a deed that describes the nature of the interest conveyed," *Premier Bank v. Bd. of Cty. Comm'rs,* 214 P.3d 574, 578 (Colo. App.2009), a habendum clause may also describe the nature of the interest conveyed; a habendum clause may define, explain, or qualify the premises described in a granting clause, *see, e.g., Claridge v. Phelps,* 105 Ind. App. 344, 11 N.E.2d 503, 504 (1937) ("The premises of a deed are often expressed in general terms, admitting of various explanations in a subsequent part of the deed. Such explanations are usually found in the habendum. The office of the habendum is properly to determine what estate or interest is granted by the deed[.] ... [T]he habendum may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to the estate granted in the premises." (citation omitted)); *Bryant v. Shields,* 220 N.C. 628, 18 S.E.2d 157, 159 (1942) ("The usual office

of the habendum in a deed is to define the extent of the ownership in the thing granted to be held and enjoyed by the grantee; to lessen, enlarge, explain or qualify the estate granted in the premises; but not to contradict or be repugnant to the estate granted therein. . . ." (citations omitted)).

¶ 27 Here, the clauses containing the reservations in the 1950 Deeds begin "TO HAVE AND TO HOLD." They also contain a condition affecting the grant, i.e. the reservation of all oil, gas, and minerals in the property. Such clauses are typically classified as habendum clauses, rather than as mere warranty clauses. *See, e.g., Michaelson v. Michaelson*, 939 P.2d 835, 839 (Colo. 1997) (referring to a clause that begins "TO HAVE AND TO HOLD" as a habendum clause). Because the clauses containing the reservation in this case were habendum clauses, rather than warranty clauses, *O'Brien* is inapposite.

¶ 28 Finally, we reject the Furrow Defendants' assertion that the reservation is invalid because it "fails to identify *any* person or persons as the party(ies) to whom such reservation applies." The Furrow Defendants fail to cite any law in support of this argument, and we are unaware of any. In our view, an unadorned reservation clause evidences an intent by the grantors to reserve for themselves the mineral rights in the land. Consequently, we conclude that the 1950 Deeds reserved mineral rights in Plaintiffs' predecessors-in-interest, the grantors.

### B. The 1973 Action

¶ 29 The parties agree that, if we interpret the 1950 Deeds as we have, the 1973 Action affected only Tract A.[3]

#### 1. Facts

¶ 30 In the present case, the district court held the 1973 Action with respect to Tract A

void because of inadequate service of process on Plaintiffs' predecessors-in-interests, the Gadbois. The Furrow Defendants' predecessor-in-interest (at the time, Thomas L. Brown) served Plaintiffs' predecessors-in-interest (the Gadbois) in the 1973 Action only by publication.[4]

¶ 31 Brown's motion requesting leave for notice by publication stated that he had searched public records in Weld and Morgan Counties and made various inquiries into the Gadbois' whereabouts. Brown stated the Gadbois' address was unknown, despite the fact that the 1950 Deeds (which were of public record in Weld County) listed the Gadbois' address as "Tulsa, Oklahoma" and a 1960 oil and gas lease (the 1960 Lease),[5] which was also of public record in Weld County, listed a specific street address in Tulsa for the Gadbois.

¶ 32 When no one appeared to oppose Brown's request for relief, the court quieted title to Tracts A–D in Brown. The district court in the present case, however, voided the judgment because Brown "failed to use due diligence when searching for [the Gadbois'] address and withheld pertinent information when filing the motion [for service by publication]."

### 2. Analysis

¶ 33 Initially, we reject the Furrow Defendants' assertion that the district court could not vacate the judgment in the 1973 Action absent a showing that Brown or his attorney knowingly withheld from the court information as to the Gadbois' possible whereabouts.

¶ 34 A default judgment entered when the trial court lacks personal jurisdiction over a defendant because of invalid service of process is void, and it must be vacated upon request. *See Weaver Constr. Co. v.*

---

3. This follows because (1) the Plaintiffs' predecessors-in-interest to Tracts B–D (i.e., the Gadbois and Van Pelts) had conveyed a portion of those mineral rights to Plaintiffs in a 1961 mineral deed, which was recorded in the Weld County public records; and (2) the Furrow Defendants' predecessor-in-interest did not name Plaintiffs as parties to the 1973 Action.

4. The summons in the 1973 Action was published in newspapers in Weld and Morgan Counties.

5. The 1960 Lease was between the Gadbois and Anderson–Prichard Oil Corporation for a portion of the mineral rights in Tract A.

*Dist. Court*, 190 Colo. 227, 230–31, 545 P.2d 1042, 1044–45 (1976); *United Bank of Boulder, N.A. v. Buchanan*, 836 P.2d 473, 477 (Colo.App.1992).

¶ 35 In 1973, the requirements for service or process by publication were governed by C.R.C.P. 4(h), which provided, in pertinent part:

> The party desiring service of process by publication shall file a motion verified by the oath of such party or of someone on his behalf for an order of publication. *It shall ... show the efforts, if any, that have been made to obtain personal service within this state and shall give the address, or last known address, of each person to be served or shall state that his address and last known address are unknown....* [I]f satisfied that *due diligence* has been used to obtain personal service within this state or that efforts to obtain the same would have been to no avail, [the court] shall order publication of the process in a newspaper....

(Emphasis added.)

¶ 36 The Furrow Defendants assert that their predecessor-in-interest, Brown, was not required to search for an out-of-state address, but only to demonstrate that there was no *Colorado* address at which the defendants in the 1973 Action could be served. We disagree.

¶ 37 The second sentence of C.R.C.P. 4(h) (1973) unambiguously requires a party to show the efforts made to obtain personal service within the state *and* to give the address or last known address of each person to be served. The latter requirement of giving an address is not contingent on whether the person to be served is believed to reside in Colorado. Rather, the "within the state" portion of the rule relates only to the party's efforts to obtain personal service. This is evidenced by *Coppinger v. Coppinger*, 130 Colo. 175, 274 P.2d 328 (1954), a case on which the Furrow Defendants rely. In *Coppinger*, the supreme court found the plaintiff had failed to comply with the "address requirement" of C.R.C.P. 4(h) (1973) when she gave a defendant's last known Colorado address despite having more recently sent him mail at a Nevada address. *Id.* at 180, 274

P.2d at 331. Under the text of C.R.C.P. 4(h) (1973), as applied in *Coppinger*, the Furrow Defendants' predecessor-in-interest, Brown, was required to give the address or last known address of the Gadbois or to state that their address was unknown at the time of filing his motion for publication, regardless of whether they lived in Colorado or elsewhere.

¶ 38 The issue before us, then, is whether the Furrow Defendants' predecessor-in-interest, Brown, (1) was obliged to exercise "due diligence" in attempting to find, and communicate to the court, the Gadbois' address before requesting service on them by publication; and, if so, (2) whether he exercised the requisite "due diligence."

¶ 39 Nothing in the text of C.R.C.P. 4(h) (1973) required Brown to exercise due diligence in locating the (present or last known) whereabouts of the Gadbois in order to effect service by publication; that rule required only a showing that diligent efforts had been made to obtain personal service "within the state." If that were the end of the matter, we would have to reverse the district court's ruling in the present case because, inasmuch as the Gadbois resided in Oklahoma, personal service on them was not likely to be accomplished in Colorado.

¶ 40 Compliance with the 1973 rule, however, is not the end of the matter. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court noted:

> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.
>
> It would be idle to pretend that publication alone as prescribed here, is a reliable

means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Id.* at 315, 70 S.Ct. 652 (citations omitted).

¶ 41 Consequently, the Supreme Court in *Mullane* held that service by publication is sufficient notice to persons "missing or unknown .... whose interests or whereabouts could not with due diligence be ascertained." *Id.* at 317, 70 S.Ct. 652; *see Rael v. Taylor,* 876 P.2d 1210, 1225 (Colo.1994) (quoting, with approval, these parts of *Mullane* ). Notice by publication is, however, insufficient for a party whose name and address are "very easily ascertainable." *Schroeder v. City of New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

¶ 42 The constitutional requirement that a party exercise due diligence in attempting to locate an adverse party before resorting to publication as a means of serving him or her is well-established. *See* 16D C.J.S. *Constitutional Law* § 1761 (2005) ("[D]ue process requires that notice be given by mail or some other method equally certain to insure actual notice, rather than publication, to persons who are known or reasonably ascertainable, since notice by publication is not sufficient with respect to a person whose name and address are known or easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.") (footnotes omitted); *see also, e.g., Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 224 (2d Cir.2012) ("Constructive notice by publication may be sufficient to

satisfy due process 'as to persons whose whereabouts or interests c[an] not be determined through due diligence....'" (alteration in original)) (quoting *In re Agent Orange Prod. Liab. Litig. MDL No. 381,* 818 F.2d 145, 168 (2d Cir.1987)) (alteration in original); *In re Rights to Use of Gila River,* 171 Ariz. 230, 830 P.2d 442, 448 (1992) ("Although notice by publication is not sufficient due process for persons whose identity and address could be established through reasonable efforts, publication notice is sufficient for those persons 'whose interests or whereabouts could not with due diligence be ascertained.'" (citation omitted) (quoting *Mullane,* 339 U.S. at 318, 70 S.Ct. 652)) (citation omitted); *Munster v. Groce,* 829 N.E.2d 52, 60 (Ind.Ct. App.2005) ("[T]he Due Process Clause requires that in order for constructive notice of a lawsuit to be sufficient, a party must exercise due diligence in attempting to locate a litigant's whereabouts."); *In re Estate of Vaughan,* 253 P.3d 1010, 1014–15 (Okla.Ct. Civ.App.2011) ("[N]otice by publication is clearly insufficient with respect to one whose name and address are known or readily ascertainable from sources at hand." (quoting *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713, 718 (Okla.1968))); *Nolan v. Nolan,* 490 N.W.2d 517, 520 (S.D.1992) ("[B]efore service by publication ... may be ordered, the party instituting the litigation must exhaust all reasonable means available in an effort to locate interested parties to the litigation.").

¶ 43 The issue, then, is whether Brown exercised "due diligence" in trying to locate the Gadbois' whereabouts before he resorted to serving them via publication.

¶ 44 "Due diligence" is commonly understood as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation. —Also termed *reasonable diligence* ; *common diligence.*" Black's Law Dictionary 553 (10th ed. 2014).[6]

---

6. "Due diligence" was understood as having this type of meaning prior to 1973 too. *See* Black's Law Dictionary 443 (rev. 4th ed. 1968) (defining "due diligence" as "a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case").

¶ 45 In *Abreu v. Gilmer,* the Nevada Supreme Court said:

[T]here is no objective, formulaic standard for determining what is, or is not, due diligence. The due diligence requirement is not quantifiable by reference to the number of service attempts or inquiries into public records. Instead, due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant. As the Utah Supreme Court recognized:

The diligence to be pursued and shown ... is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.... Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.

115 Nev. 308, 985 P.2d 746, 749 (1999) (alterations in original) (quoting *Parker v. Ross,* 117 Utah 417, 217 P.2d 373, 379 (1950)); *cf. In re Software Toolworks Inc.,* 50 F.3d 615, 621 (9th Cir.1994) ("[D]ue diligence is, '[i]n effect, ... a negligence standard.'" (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 208, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976))) (alterations in original). Due diligence requires that a plaintiff follow up on possessed or reasonably available information or resources. *Modan v. Modan,* 327 N.J.Super. 44, 742 A.2d 611, 613–14 (App.Div.2000); *see Kott v. Superior Court,* 45 Cal.App.4th 1126, 53 Cal.Rptr.2d 215, 221 (1996) ("[L]ikely sources of information ... must be searched before resorting to service by publication." (citation omitted)); *Southeast & Assocs., Inc. v. Fox Run Homeowners Ass'n, Inc.,* 704 So.2d 694, 696 (Fla.Dist.Ct.App.1997) ("The plaintiff has the burden of showing that it reasonably employed the knowledge at its command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to serve the defendant personally."); *Barclays Am./Mortg. Corp. v. BECA Enters.,* 116 N.C.App. 100, 446 S.E.2d 883, 886 (1994) (Due diligence "requires a party to use all reasonably available resources to accomplish service.").

¶ 46 Such information or resources include, for example, local tax rolls, deed records, judicial records, and other official records, as well as available secondary sources, such as telephone directories or the like. *Bomford,* 440 P.2d at 715–16; *see Sprang v. Petersen Lumber, Inc.,* 165 Ariz. 257, 798 P.2d 395, 399 (App.1990) ("A 'due diligent effort' requires such pointed measures as an examination of telephone company records, utility company records, and records maintained by the county treasurer, county recorder, or similar record keepers.").[7]

¶ 47 Here, the motion for publication Brown filed in 1973 states that "search has been made of the public records of the County of Weld and County of Morgan, State of Colorado." Such a search, if undertaken with reasonable diligence, should have resulted in the discovery of the 1950 Deeds, as they were readily available matters of public record and part of the relevant chain of title. Each document identified Tulsa, Oklahoma, as the city of the Gadbois' residence. Brown could—and should—have discovered this information. *See In re Colon,* 563 F.3d 1171, 1173 (10th Cir.2009) (recognizing that a per-

7. The Furrow Defendants' reliance on *Siddoway v. Ainge,* 189 Colo. 173, 538 P.2d 110 (1975), and *White Cap Mining Co. v. Resurrection Mining Co.,* 115 Colo. 396, 174 P.2d 727 (1946), for the proposition that a party should not have to search property titles before resorting to service by publication is misplaced. Both cases involve a county treasurer's obligation to ascertain the current addresses of delinquent property taxpayers before issuing tax deeds. Under section 39–11–128, C.R.S.2015, a county treasurer must make "diligent inquiry" into information available in county records. Neither *Siddoway* nor *White Cap Mining Co.* say that a treasurer has no duty to search county records; they merely state that a treasurer need not search *beyond* county records to ascertain taxpayers' addresses. *See Siddoway,* 189 Colo. at 176, 538 P.2d at 113 (holding that a treasurer need not search miscellaneous personal correspondence *after* an address had been found in the county's records); *White Cap Mining Co.,* 115 Colo. at 408, 174 P.2d at 733 (stating that a treasurer need not search secretary of state records upon failure to locate an address in county records); *see also Schmidt v. Langel,* 874 P.2d 447, 450 (Colo.App.1993) (interpreting *Siddoway* and *White Cap Mining Co.* in this way).

son exercising "reasonable prudence and diligence" in examining property's chain of title would have located a deed containing a misstatement in its description of the property).

¶ 48 Similarly, Brown could—and should—have discovered the contents of the 1960 Lease which, among other things, identified the particular street address at which the Gadbois lived in Tulsa.

¶ 49 Although there is some question as to whether the 1960 Lease would have been discovered in a chain of title search, the 1960 Lease was recorded and listed in the same grantor-grantee index and under the names of the same grantors (the Gadbois) as the pertinent 1950 deed. *See* § 487, G.L. (1877) (requiring entries to be recorded in grantor-grantee indices).[8] In reviewing the 1950 Deeds, Brown or his attorney would have seen the mineral reservation in the habendum clause of the Tract A Deed.

▆▆ ¶ 50 Thereafter, in light of the purpose and effect of quiet title actions,[9] Brown could be expected to have (1) searched the grantor-grantee indices for any subsequent transfers of the potentially reserved mineral rights and (2) found the 1960 Lease that listed the Gadbois' address. *See Collins v. Scott*, 943 P.2d 20, 22 (Colo.App. 1996) ("Documents outside the chain of title provide ... notice [if] ... a possible irregularity appears in the record which *indicates the existence of some outside interest* by which the title may be affected. In such cases, a purchaser is bound to investigate and is charged with knowledge of the facts to which the investigation would have led." (emphasis added)); *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver, N.A.*, 744 P.2d 750, 753 (Colo.App.1987) ("[A] purchaser is bound by the record. If it indicates the existence of some outside interest by which the title may be affected, a purchaser is bound to investigate and is charged with knowledge of the facts to which the investi-

gation would have led." (citing *Delta Cty. Land & Cattle Co. v. Talcott*, 17 Colo.App. 316, 68 P. 985 (1902))); *see also Guar. Bank & Trust Co. v. LaSalle Nat'l Bank Ass'n*, 111 P.3d 521, 523 (Colo.App.2004) ("[A]s long as an instrument is properly recorded, subsequent purchasers have an obligation to find it at the county clerk and recorder's office and are considered to have constructive notice of it even if they do not locate it.").

¶ 51 Yet none of the information from the 1950 Deeds or the 1960 Lease was relayed to the court in Brown's motion for publication.

¶ 52 Under the circumstances, the district court properly concluded that, because Brown had failed to exercise due diligence in determining the Gadbois' whereabouts, his attempt to serve them via publication was invalid and the judgment against them was void. *See Omega II Inv. Co. v. McLeod*, 153 Ariz. 341, 736 P.2d 824, 825 (App.1987) ("[A] finding of due diligence prior to service by publication is a jurisdictional prerequisite. Where the location of record owners of property was readily available, courts have uniformly held that the trial court lacked jurisdiction when the party attempted service by publication because the condition giving a plaintiff the right to invoke [service by publication] did not exist.") (alteration in original) (citations omitted).

### III.  Conclusion

¶ 53 The district court properly granted summary judgment to Plaintiffs, while denying it to the Furrow Defendants.

¶ 54 Consequently, the district court's judgment is affirmed.

JUDGE BOORAS and JUDGE NAVARRO concur.

---

8. This method of recordation was first established in 1877 and is identical to that which appeared in the 1973 statute, § 30–10–411, C.R.S.1973. This version has since been repealed.

9. "The manifest intent of [quiet title] is to provide a complete adjudication of the rights of all parties and to grant full and adequate relief so as to completely determine the controversy and en-

force the rights of the parties." *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 612 (Colo.2005) (alteration in original) (citations omitted). "Given the finality of a quiet title action ... it is incumbent upon all parties to raise *any* claims, issues or defenses that might affect the court's adjudication...." *Id.* at 609 (emphasis added).