The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY

June 30, 2022

**2022COA69**

**No. 19CA1425, *Petition of J.N.* — Juvenile Court —
Dependency and Neglect; Civil Procedure — Process — Service
by Publication — Relief from Judgment or Order — Judgment is
Void**

In this case arising from a dependency and neglect action,

father moved to vacate various juvenile court orders under C.R.C.P.

60(b)(3), arguing that service by publication was improper and

therefore the orders were void. A division of the court of appeals

relies on well-settled law to conclude that the juvenile court erred

by granting the department's request to serve father by publication.

The department's motion failed to describe any efforts to obtain

personal service (or to explain why efforts would have been futile),

as required by section 19-3-503(8)(b) and C.R.C.P. 4(g), and the

record does not support a finding of diligent efforts. Accordingly,

because father did not receive proper notice, the entry of certain orders violated his due process rights, and the juvenile court was therefore required to vacate the orders.

Because the case involves issues of public importance, the division elects to publish the opinion.

COLORADO COURT OF APPEALS                                              **2022COA69**

---

Court of Appeals No. 19CA1425
Jefferson County District Court No. 06JV377
Honorable Ann Gail Meinster, Judge

---

In the Matter of the Petition of J.N.,

Petitioner-Appellant,

In the Interest of C.G., a Child,

and Concerning Jefferson County Department of Human Services,

Respondent-Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE HARRIS
Yun and Graham*, JJ., concur

Announced June 30, 2022

---

Bachus & Schanker, L.L.C., J. Kyle Bachus, Denver, Colorado; The Kane Law
Officer, L.L.C., Bastion T. Kane, Lakewood, Colorado, for Petitioner-Appellant

Kimberly S. Sorrells, County Attorney, Eric T. Butler, Deputy County Attorney,
Rebecca P. Klymkowsky, Assistant County Attorney, Golden, Colorado, for
Respondent-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1　　Father, J.N., appeals the juvenile court's order denying his C.R.C.P. 60(b) motion to vacate orders entered in the dependency and neglect proceeding regarding his child, C.G.  We reverse the order and remand the case to the juvenile court for further proceedings.

## I.　Procedural History

### A.　The Dependency and Neglect Proceeding

¶ 2　　On March 26, 2006, mother was arrested for child abuse.  At the time, she was with her two children — C.G. (the biological child of father) and C.G.'s half-brother (the biological child of Jon Phillips).  A magistrate granted temporary protective custody of the children to the Jefferson County Division of Children, Youth and Families (Division).

¶ 3　　Two days later, the Division filed a petition for temporary legal custody, naming mother, Phillips, and "John Doe" as respondents.  At a shelter hearing held that same day, the juvenile court magistrate granted the motion.

¶ 4　　The next day, March 29, 2006 — three days into the case — the Division moved for an order authorizing service on father and

Phillips by publication.  As grounds for the motion, the Division

stated only that

> the above-named persons have no residence
> within Colorado and his [sic] place of residence
> is not known or the above-named persons can
> not [sic] be found within Colorado after due
> diligence, the subject children are present in
> Colorado and the Colorado Children's Code,
> the Colorado Rules of Juvenile Procedure and
> the Colorado Rules of Civil Procedure allow
> jurisdiction to be conferred on the court under
> these circumstances through the requested
> service by publication.

The motion did not describe the Division's efforts to obtain personal

service; nor did it assert facts to establish that such efforts would

have been futile.

¶ 5    Nonetheless, the magistrate granted the motion, finding that

"due diligence ha[d] been used to obtain personal service within

Colorado or that efforts to obtain personal service within Colorado

would have been to no avail."  The magistrate did not explain the

basis for the ruling.

¶ 6    The summons was published on April 6, 2006, in the High

Timber Times, a local newspaper in Conifer, Colorado.

¶ 7     Father did not appear at any subsequent hearings. Phillips, however, appeared at all subsequent hearings, as he was notified of the proceedings by a caseworker.

¶ 8     In May 2006, the magistrate gave Phillips temporary legal custody of both children under the protective supervision of the Division. The permanency plan for C.G. (the child) was then changed to adoption by a nonrelative.

¶ 9     In October 2006, the Division moved for a default judgment adjudicating the child dependent and neglected as to father, still identified as "John Doe." The motion, which noted that father had been served by publication in April, included an affidavit from the ongoing caseworker, Alysse Nemecek. Nemecek averred that father "is not an infant, not in the military, not incompetent, and not an officer or agent of the State of Colorado." *See* C.R.C.P. 121, § 1-14(1)(c) ("The affidavit [attesting to the defendant's status] must be executed by the attorney for the moving party on the basis of reasonable inquiry."). Nemecek did not provide any basis for her statement or attest to a reasonable inquiry.

¶ 10　　On November 1, 2006, the magistrate adjudicated the child dependent or neglected as to father by default.  The magistrate declined to adopt a treatment plan for father, citing section 19-3-508(1)(e)(I), C.R.S. 2021, which applies when a child has been abandoned — meaning, despite "reasonable efforts to identify and locate the parent," the identity of the parent remains unknown for three months or more, *see* § 19-3-604(1)(a)(II), C.R.S. 2021.  The magistrate did not describe any efforts by the Division to identify and locate father.

¶ 11　　At a hearing on January 11, 2007, the magistrate allocated parental responsibilities for both children to Phillips and relieved the Division of protective supervision.  In February, after the written allocation of parental responsibilities order was certified in a domestic case, *see* § 19-1-104(6), C.R.S. 2021, the juvenile court terminated the dependency and neglect proceeding.

¶ 12　　On May 6, 2007, the child died.  Phillips was convicted of first degree murder of the child and child abuse resulting in death.  *See People v. Phillips*, 2012 COA 176, ¶ 42.

## B. The C.R.C.P. 60(b) Proceeding

¶ 13    Following the child's death, father, mother, and the personal representative of the child's estate initiated a federal court action against multiple parties, including the Division.

¶ 14    In June 2014, father moved for C.R.C.P. 60(b) relief in the dependency and neglect proceeding, seeking to vacate certain of the court's orders.  Father asserted that the orders were void for lack of proper service, *see* C.R.C.P. 60(b)(3), and had been obtained through fraud on the court, *see* C.R.C.P. 60(b)(2).

¶ 15    The juvenile court dismissed father's motion as moot because the child had died.  On appeal, a division of this court reversed the order and remanded the case for a determination on the merits.  *See People in Interest of C.G.*, 2015 COA 106, ¶ 2.  The division concluded the case was not moot because the orders are being used to bar father from pursuing relief in federal court.  *Id.* at ¶¶ 30-31.

¶ 16    On remand, the juvenile court held a half-day hearing and admitted deposition testimony from the federal action.  The evidence established the following:

- A Division intake caseworker opened the dependency and neglect case on March 28, 2006.

- The intake caseworker did not recall "doing any work at all to locate" father. If she had made any efforts, she would have documented them, because that "was a requirement of the job."

- The intake caseworker agreed that her transfer form indicated that she had not conducted a diligent search for father.

- The intake caseworker was the only assigned caseworker on March 29, 2006, when the assistant county attorney filed a verified motion for service by publication. The intake caseworker did not know the basis for the representation in the verified motion that father could not "be found within Colorado after due diligence."

- The Division's intake supervisor signed the verified motion on behalf of the Division. When she signed the verification, she had "no information" on whether a diligent search for father had been conducted.

- The intake supervisor relied on the caseworker to "provide the factual basis" for the verification.

- The assistant county attorney acknowledged that "prior to seeking permission to serve by publication . . . the state is required to exercise due diligence in attempting to locate the parent."

- When she signed the verified motion to serve father by publication, the assistant county attorney did not know what efforts the Division had made to locate father. As a general matter, she does not ask the caseworkers about "what [has been] done to locate the parent."

- Nemecek, the ongoing caseworker, became involved in the case on April 6, 2006, the date father was served by publication. She agreed that "somebody on behalf of the county needed to make a diligent search for" father, but she did not undertake a search, nor did she attempt to identify the "actual name of the biological father." She could not think of anyone at the Division, with the possible exception

of the intake caseworker, who had "looked for" father. (The intake caseworker did not look for father.)

- No one from the Division spoke to mother until April 6, the date the notice was published.

¶ 17    The juvenile court denied the C.R.C.P. 60(b) motion on the grounds that it was untimely and, in the alternative, that father had not established either a lack of proper service or fraud on the court.

## II.    Father's C.R.C.P. 60(b) Motion

¶ 18    On appeal, father contends that the juvenile court erred by concluding that (1) the Division properly served him by publication; (2) the Rule 60(b) motion was untimely; and (3) the Division did not commit fraud on the court. Because we agree with father's first two contentions, we do not address the third.

## A.    Service by Publication

¶ 19    Father argues that because the Division failed to comply with the statutory prerequisites to service by publication, he did not receive proper notice of the proceedings, resulting in a due process violation, and the juvenile court's orders and judgments are therefore void as to him.

8

¶ 20    The burden to establish that a judgment is void is on the moving party, who must demonstrate the invalidity of the judgment by clear and convincing evidence. *Minshall v. Johnston*, 2018 COA 44, ¶ 12. We review de novo whether a judgment is void under C.R.C.P. 60(b)(3) based on improper service of process. *See Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010).

### 1. The Division's Verified Motion for Service by Publication Was Procedurally Deficient

¶ 21    In dependency and neglect proceedings, notice shall be by personal service. § 19-3-503(7), C.R.S. 2021. However, when the person to be served "cannot be found within the state after due diligence," service may be by publication "pursuant to rule 4(g) of the Colorado rules of civil procedure." § 19-3-503(8)(b).

¶ 22    Under C.R.C.P. 4(g), a motion for service by publication must be verified and must include the following information:

- the facts authorizing service by publication;

- the efforts, if any, that have been made to obtain personal service; and

- the address, or last known address, of the person to be served or a statement that the address and last known address are unknown.

¶ 23    The motion may be granted only if the party seeking service by publication establishes that it exercised due diligence to obtain personal service or that efforts to do so would have been to no avail.  C.R.C.P. 4(g); *Rael v. Taylor*, 876 P.2d 1210, 1223 (Colo. 1994).  A conclusory statement that the department of human services has exercised due diligence to locate a parent is insufficient to warrant service by publication.  *See People in Interest of A.B-A.*, 2019 COA 125, ¶ 53.  Instead, the motion must describe what efforts the department made to locate the parent and obtain personal service.  *Id.*; *see also Owens v. Tergeson*, 2015 COA 164, ¶ 37 (Rule 4 "unambiguously requires a party to show the efforts made to obtain personal service within the state.").

¶ 24    Because constructive service is in derogation of the common law, there must be strict compliance with every requirement of section 19-3-503(8)(b) and C.R.C.P. 4(g).  *See Coppinger v. Coppinger*, 130 Colo. 175, 177, 274 P.2d 328, 330 (1954).

Compliance must appear affirmatively from the record, and the motion and affidavit upon which the order for constructive service is entered take precedence over recitals in the court's judgment. *Id.*

¶ 25    The Division's argument that it did not have sufficient information to locate father when it moved for service by publication is beside the point. The question is whether the motion satisfied the requirements of section 19-3-503(8)(b) and C.R.C.P. 4(g). "What the affiant knew or did not know, and might have stated in the affidavit, but did not, is wholly immaterial. The important thing is what was or was not stated therein." *Millage v. Richards*, 52 Colo. 512, 514, 122 P. 788, 788 (1912).

¶ 26    The Division's verified motion for service by publication indisputably failed to satisfy the statutory requirements. The motion simply parroted section 19-3-503(8)'s language. It did not describe any diligent efforts by the Division to identify, locate, or personally serve father. Nor did it explain why efforts would have been futile.

2.    The Division's Verified Motion for Service by Publication Was Substantively Deficient

¶ 27    In addition to being procedurally deficient, the motion was substantively deficient. Contrary to the motion's averments, the record does not support findings that the Division exercised due diligence to locate and obtain personal service on father before moving for service by publication or that diligent efforts would have been to no avail.

¶ 28    Though the moving party ordinarily bears the burden to establish improper service resulting in a lack of personal jurisdiction, when, as here, the motion is facially deficient, the burden shifts back to the serving party to demonstrate adequacy of service. *Goodman,* 222 P.3d at 315. Thus, the Division must show that it made diligent efforts to serve father personally or, if it did not, that any efforts would have been futile.

¶ 29    To satisfy that burden, the Division must show "that it reasonably employed the knowledge at its command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to serve [the party] personally." *Se. & Assocs., Inc. v. Fox Run Homeowners Ass'n,* 704 So. 2d 694, 696 (Fla. Dist. Ct. App. 1997); *see also* Dep't

12

of Hum. Servs. Rule 7.304.52(A)-(B), 12 Code Colo. Regs. 2509-4 (effective July 1, 1999-Aug. 6, 2009) ("Diligent search" means "the timely good faith effort to locate any absent parent of a child[] entering out-of-home placement."); Black's Law Dictionary 573 (11th ed. 2019) (Due diligence is "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation."). The due diligence inquiry is an objective one: we ask what actions a reasonably prudent person would have taken under the circumstances to ensure that interested parties would be identified and personally served. *Lobato v. Taylor*, 70 P.3d 1152, 1161 (Colo. 2003).

¶ 30    The verified motion seeking service by publication was filed on March 29, 2006. The question therefore is whether the record supports a finding that the Division exercised due diligence to identify and locate father before March 29.

¶ 31    The juvenile court did not make any findings in this regard. The record definitively establishes that no one made any efforts, much less diligent efforts, to find father before the motion was filed.

13

Before March 29, the only person who could have made such efforts was the intake caseworker. But she did not recall doing anything to locate father.

¶ 32 The Division argues, and the juvenile court found below, that diligent efforts would have been to no avail because the Division did not know father's full name.

¶ 33 The problem with that argument is that there is no evidence in the record that the Division asked anyone for father's name. Diligence that "stops just short of the place where if it were continued might reasonably be expected to uncover" the identity of the person on whom service is sought does not constitute due diligence. *Owens*, ¶ 45 (quoting *Abreu v. Gilmer*, 985 P.2d 746, 749 (Nev. 1999)).

¶ 34 Mother testified that maternal grandmother knew father's name. That testimony was corroborated by father's testimony that he had spoken to maternal grandmother on the telephone during his time in the Navy, shortly after the child's birth. The initial caseworker recalled taking the children to maternal grandmother's house after mother's arrest. But there is no evidence that the

caseworker asked maternal grandmother if she knew father's name — not at the time she dropped off the children or at any time before the Division filed its verified motion for service by publication. Thus, on this record, the Division cannot meet its burden to show that diligent efforts would necessarily have been unsuccessful in identifying and locating father.

      3.    Because Service by Publication Was Improper, the Court Lacked Personal Jurisdiction Over Father, Rendering Its Orders and Judgments Void as to Father

¶ 35    If service does not conform to the requirements of C.R.C.P. 4, the court does not obtain personal jurisdiction over the party and any resulting judgment is void. *Minshall,* ¶ 13; *Owens,* ¶ 34; *see Jones v. Colescott,* 134 Colo. 552, 553, 307 P.2d 464, 465 (1957) (default judgment was void because motion for service by publication did not describe efforts to obtain personal service on defendants); *see also Millage,* 52 Colo. at 514, 122 P. at 788 (An affidavit "containing the statements required by statute" is "an essential prerequisite to give the court jurisdiction to proceed."); *People in Interest of Clinton,* 762 P.2d 1381, 1384 (Colo. 1988)

15

(noncompliance with statutory provisions pertaining to notice or service of process deprives court of personal jurisdiction over party).

¶ 36        Likewise, when the court lacks personal jurisdiction over a party based on deficient notice, a judgment entered against that party constitutes a due process violation.[1]  *See Burton v. Colo. Access*, 2015 COA 111, ¶ 11 (where plaintiff failed to serve defendant with complaint, trial court lacked jurisdiction and the entry of judgment constituted a due process violation), *aff'd*, 2018 CO 11; *In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011) (where court authorized service by publication on father based on false statements by mother, service was deficient, father lacked notice, and the entry of judgment constituted a due process violation).

## B.    Timeliness

---

[1] The only exception to this rule is that a default judgment is not void for failure to provide notice if the defaulting party was nonetheless aware that a default judgment was sought and had an opportunity to be heard.  *In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011).

¶ 37     The juvenile court concluded, as an independent basis for denial, that father's Rule 60(b)(3) motion was untimely.  The Division does not defend the court's order on this ground.

¶ 38     True, Rule 60(b) provides that a motion to set aside a judgment or order "shall be made within a reasonable time."  Nonetheless, because a void judgment is "without effect," it "may be attacked at any time."  *Burton v. Colo. Access*, 2018 CO 11, ¶ 35; *see also In re Marriage of Stroud*, 631 P.2d 168, 170 n.5 (Colo. 1981) ("[W]here the motion alleges that the judgment attacked is void, C.R.C.P. 60(b)(3), the trial court has no discretion.  The judgment either is void or it isn't and relief must be afforded accordingly.").

¶ 39     *Haskell v. Gross*, 145 Colo. 365, 358 P.2d 1024 (1961), the case on which the juvenile court relied, does not support a contrary conclusion.  In that case, the defendant, who had initially participated in the proceedings, claimed he had not received notice of the default judgment.  *Id.* at 366, 358 P.2d at 1025.  The record, however, did not support his claim, and therefore the judgment was presumed valid.  *Id.* at 367-68, 358 P.2d at 1026.

¶ 40    But here, we have determined that father did not receive proper notice of the proceedings because service by publication was not authorized under the circumstances.  Therefore, his motion to vacate the juvenile court's orders and judgments was timely.

### III.    Conclusion and Remand Order

¶ 41    The order denying father's C.R.C.P. 60(b) motion is reversed, and the case is remanded to the juvenile court.  On remand, the juvenile court must vacate the following orders and judgments[2]:

- The May 29, 2006, order transferring temporary legal custody of the child from the Division to Phillips, with protective supervision by the Division.

- The November 1, 2006, judgment adjudicating the child dependent or neglected by default as to father, who was identified as John Doe.

---

[2] To the extent father argues that the April 20, 2006, default judgment is void as to him, we disagree.  That order did not apply to father; it adjudicated the children dependent and neglected as to mother only.  We also disagree that the order adding Phillips's girlfriend as a special respondent in the case is void as to father; that order did not implicate father's rights at all.

18

- The January 25, 2007, judgment allocating parental responsibilities to Phillips and relieving the Division of protective supervision.

- The February 7, 2007, judgment terminating the dependency and neglect proceeding.

JUDGE YUN and JUDGE GRAHAM concur.